**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER WILSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO. 1:23-cv-00184-SLC** |
| | ) | |
| **JOSEPH HUTTER,** *Allen County Building* | ) | |
| *Commissioner, sued in the individual and* | ) | |
| *official capacity, et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

**OPINION AND ORDER**

*Pro se* Plaintiff Christopher Wilson, an electrician, filed this action against the Allen

County Board of Commissioners ("Board of Commissioners"), Allen County Building

Commissioner Joseph Hutter ("Hutter" or "Building Commissioner"), Allen County Building

Department ("ACBD") Chairman of the Board of Directors Jon Brelje, and retired Chief

Electrical Inspector James Krauhs, asserting that Defendants violated Wilson's constitutional

rights when the ACBD revoked his Master Electrician designation and the Electrical Contractors

license of his business, AEY Electrical Service, LLC ("AEY"), and placed a condition on and

denied AEY certain permits. (ECF 7).[1]

On September 18, 2023, Wilson filed a motion for partial summary judgment (Wilson's

"summary judgment motion"), together with a supporting brief, seeking judgment as a matter of

---

[1] The parties consented to the exercise of jurisdiction by the Magistrate Judge pursuant to 28 U.S.C. §
636(c). (ECF 15, 17).

Wilson also sued Dennis Brockhouse, but the parties subsequently stipulated to dismiss this Defendant and
the slander claim advanced against him in Count 6 of the amended complaint. (ECF 79, 82). And while Wilson sued
ACBD initially, ACBD was dismissed at the outset because it "is an arm of the County and not a suable entity under
42 U.S.C. § 1983." (ECF 8 at 2).

law in his favor on Counts 1, 3, 4, and 5 of his seven-count amended complaint. (ECF 25, 26).[2] Defendants moved to strike the motion in its entirety on October 16, 2023. (ECF 38). The Court stayed briefing on Wilson's summary judgment motion while the parties briefed the motion to strike. (ECF 39). Wilson filed a response to the motion to strike on October 19, 2023, and Defendants timely replied, after which the Court lifted the stay on the briefing of Wilson's summary judgment motion. (ECF 40, 45, 50).

On December 15, 2023, Defendants filed a response brief to Wilson's summary judgment motion, together with their own cross-motion for summary judgment on Counts 1, 3, 4, and 5 (Defendants' "summary judgment motion"), a statement of material facts, supporting evidence, and notice of summary judgment motion. (ECF 59 to ECF 63; ECF 63-1 to ECF 63-13). On January 2, 2024, Wilson filed a reply brief to his summary judgment motion, a response to Defendants' summary judgment motion, two supporting affidavits, and various exhibits. (ECF 66 to ECF 68; ECF 68-1 to 68-2). On January 30, 2024, Defendants filed a motion to strike Wilson's reply brief to his summary judgment motion, his response brief to their summary judgment motion, portions of one affidavit, and the other affidavit and exhibits in their entirety. (ECF 75). Wilson filed a response to the motion to strike on February 5, 2024. (ECF 78). Defendants did not file a reply brief to their summary judgment motion or the motion to strike. On February 26, 2024, Wilson filed a motion requesting a hearing to present oral argument on the pending motions. (ECF 86). The motions are all ripe for ruling. *See* N.D. Ind. L.R. 7-1(d), 56-1.

---

[2] Wilson titles these counts in his amended complaint as follows: Count 1 - Restriction of License; Count 3 - Revocation of Contractors License; Count 4 - Revocation of Master Electrician License; and Count 5 - Failure to Intervene. (ECF 7). Wilson does not move for summary judgment on Count 2 - Conspiracy Against Rights or Count 7 - Interference. (*Id.*). To reiterate, Count 6 - Slander has already been dismissed. (ECF 79, 82).

For the following reasons, Defendants' first motion to strike will be denied, their second motion to strike will be granted in part and denied in part, Wilson's summary judgment motion will be DENIED, and Defendants' summary judgment motion will be GRANTED IN PART and DENIED IN PART. Because the Court finds that oral argument is unnecessary for purposes of ruling on these motions, Wilson's motion for oral argument will also be DENIED.

## I. DEFENDANTS' FIRST MOTION TO STRIKE

In their motion to strike filed on October 16, 2023 (ECF 38), Defendants seek to strike Wilson's summary judgment motion (ECF 25) in its entirety because it does not comply with this Court's Local Rule 56-1(a). That rule requires a party moving for summary judgment to separately file: "(1) a motion; (2) a supporting brief; and (3) a Statement of Material Facts with numbered paragraphs for each material fact the moving party contends is undisputed which includes: (A) a short statement of each fact; and (B) a citation to evidence supporting each fact . . . ." N.D. Ind. L.R. 56-1(a).

Defendants observe that Wilson's Statement of Material Facts, which is embedded in his summary judgment motion (ECF 25), does not meet the format requirements of Local Rule 56-1(a). (ECF 38 at 2). Defendants further assert that Wilson's motion and supporting brief contain statements of issues, argument, legal conclusions, and unverified facts, rather than actual supported facts. (*Id.* at 2-3). Defendants also contend that Wilson cites exhibits filed with his complaint without any verification or authentication. (*Id.* at 3). Finally, Defendants argue that Wilson seems to base his summary judgment motion on a criminal statute, 18 U.S.C. § 242, which does not give rise to a private right of action and is inapplicable to this case. (*Id.*).

Wilson responds that Defendants' arguments "are not issues of substance but instead procedural details" and asks that the Court afford him "some leeway in how the [m]otion was

formatted" given his *pro se* status. (ECF 40 at 2). In that regard, "the Supreme Court has made

clear that even *pro se* litigants must follow rules of civil procedure." *Cady v. Sheahan*, 467 F.3d

1057, 1061 (7th Cir. 2006) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)). Having

said that, "the Court prefers to rule on the merits of matters before it rather than on

technicalities." *Bonzani v. Goshen Health Sys. Inc.*, No. 3:19-CV-586-DRL-MGG, 2022 WL

18530866, at *1 (N.D. Ind. Dec. 19, 2022) (citing *Foman v. Davis*, 371 U.S. 178, 181 (1962)).

Additionally, Local Rule 1-1(b) permits the Court to "suspend or modify any rule in a particular

case in the interest of justice." N.D. Ind. L.R. 1-1(b).

"Motions to [s]trike are disfavored." *Nuzzi v. St. George Cmty. Consol. Sch. Dist. No.

258*, 688 F. Supp. 2d 815, 830 (C.D. Ill. Feb. 23, 2010) (citation omitted); *see also Heller Fin.,

Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). The court "generally relies on

its ability to consider only arguments and facts which are properly presented and rarely grants

motions to strike." *Nuzzi*, 688 F. Supp. 2d at 830 (citations omitted). "This court . . . is confident

that it can rely only on admissible evidence and proper and accurate statements of the facts in

ruling on a [m]otion for [s]ummary [j]udgment." *Id.* (citation omitted); *see Compton v. DuPage

Cnty. Health Dep't*, 426 F. Supp. 3d 539, 545 (N.D. Ill. Dec. 12, 2019) ("[M]otions to strike at

the summary-judgment stage are particularly unnecessary, because the court must always review

statements of material facts and eliminate from consideration any argument, conclusions, and

assertions that are unsupported by the record." (citation and internal quotation marks omitted)).

Given Wilson's *pro se* status, the Court will decline to strike Wilson's summary

judgment motion on the basis that it does not fully comply with Local Rule 56-1's format

requirements. As to Defendants' other arguments, the Court is confident that it can discern and

reject from consideration any argument, conclusion, and assertion that lacks support of evidence

4

in the record. *See, e.g.*, *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1018 (N.D. Ill. May 11, 2018) (denying defendant's motion to strike and informing that the court "disregard[ed] the portions of the parties' Local Rule 56.1 submissions that make legal arguments and assert legal conclusions, which are not factual statements at all" (collecting cases)).[3] Accordingly, Defendants' first motion to strike Wilson's summary judgment motion (ECF 38) will be DENIED.

## II. DEFENDANTS' SECOND MOTION TO STRIKE

In their second motion to strike filed on January 30, 2024 (ECF 75), Defendants seek to strike Wilson's reply brief to his summary judgment motion, portions of one affidavit, his response brief to their summary judgment motion, and his other affidavit and exhibits in their entirety. The Court will address each of these documents in turn.

### A. Wilson's Reply Brief to his Summary Judgment Motion

Defendants asks that the Court strike Wilson's reply brief (ECF 66) to his summary judgment motion due to Wilson submitting additional facts or evidence with his reply brief, in contravention of Local Rule 56-1(c). (ECF 75 at 3). Defendants also contend that the reply brief fails to properly cite such facts. (*Id.* at 3-4). For the same reasons stated *supra* with respect to Defendants' first motion to strike, the Court will DENY Defendants' request to strike Wilson's reply brief in its entirety on the basis of technical deficits. *See Bonzani*, 2022 WL 18530866, at *1. To reiterate, the Court is capable of discerning and rejecting from consideration any argument, conclusion, and assertion that lacks support of evidence in the record. *See Rivera*, 319 F. Supp. 3d at 1018.

---

[3] Nor will the Court strike Wilson's summary judgment motion on the basis that it cites 18 U.S.C. § 242. The Court will address this statute *infra* when taking up the parties' summary judgment motions.

*B. The First Affidavit*

Defendants next seek to strike the Sworn Affidavit of Christopher Wilson ("the First Affidavit"), which Defendants contend includes inappropriate "(a) statements of issues presented to the Court; (b) argument; (c) legal conclusions; and/or (d) unverified facts." (ECF 75 at 4 (citing ECF 68)). Wilson's reply brief contains multiple references to the First Affidavit. (*See* ECF 66).

Federal Rule of Civil Procedure 56 states that affidavits filed in support of summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "An affidavit not in compliance with Rule 56 can neither lend support to, nor defeat, a summary judgment motion." *Paniaguas v. Aldon Cos*., No. 2:04-CV-468-PRC, 2006 WL 2568210, at *4 (N.D. Ind. Sept. 5, 2006) (citing *Zayre Corp. v. S.M. & R. Co.*, 882 F.2d 1145, 1148-49 (7th Cir. 1989); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989)).

"[W]hen considering a motion to strike portions of an affidavit in support of a motion for summary judgment, courts will only strike and disregard the improper portions of the affidavit and allow all appropriate recitations of fact to stand." *Id*. (citations omitted). For example, the following statements are not properly included in an affidavit and should be disregarded: (1) conclusory allegations lacking supporting evidence, *see DeLoach v. Infinity Broad*., 164 F.3d 398, 402 (7th Cir. 1999); (2) legal argument, *see Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985); (3) inferences or opinions not "grounded in observation or other first-hand personal experience," *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991); (4) mere speculation or conjecture, *see Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999); and (5)

statements or conclusions that "contradict prior deposition or other sworn testimony," without explaining the contradiction or attempting to resolve the disparity, *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996) (collecting cases); *see James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020) ("[T]he sham-affidavit rule prohibits a party from submitting an affidavit that contradicts the party's prior deposition or other sworn testimony." (citation omitted)).

Paragraph 6. Defendants first seek to strike paragraph 6 of the First Affidavit on the basis that it "does not contain facts, but Wilson's continued argument about what has occurred." (ECF 75 at 4). Paragraph 6 seemingly refers to a "revocation letter" written by Hutter to Wilson on January 20, 2023. (ECF 68 ¶ 6; ECF 68-2 at 5). Wilson asserts that Hutter "changed his reason for emergency multiple times" after writing the letter, which "is not fair or legal," and "did not like [Wilson] informing him of seeking legal recourse when he denied [Wilson's] ability to obtain permits." (ECF 68 ¶ 6). The Court agrees this paragraph constitutes improper argument, conclusory allegations, and speculation. *See DeLoach*, 164 F.3d at 402; *Pfeil*, 757 F.2d at 862; *Stagman*, 176 F.3d at 995. The letter speaks for itself. Therefore, the motion to strike will be GRANTED as to paragraph 6.

Paragraph 8. Defendants next seek to strike paragraph 8, asserting that it "is based almost entirely on the hearsay statements of third parties and is therefore inadmissible." (ECF 75 at 4). This paragraph presumably refers to emails sent by Tri State Power, Water, and Air ("Tri State") on January 18 and 25, 2023. (ECF 68-2 at 41-42). In the paragraph, Wilson describes the terms of a purported contract he entered into with Tri State. (ECF 68 ¶ 8). This paragraph appears to be based on Wilson's personal knowledge, and thus, the motion to strike will be DENIED as to paragraph 8. *See Mitchel v. Buncich*, No. 2:11-CV-91-PRC, 2013 WL 275592, at *10 (N.D. Ind. Jan. 24, 2013) (denying motion to strike a portion of the affidavit that was "within [the

witness's] personal knowledge based on first-hand observation").

Paragraph 9. Defendants seek to strike paragraph 9, asserting that it "contains both hearsay and argument about what the hearsay means to Wilson." (ECF 75 at 4). In this paragraph, Wilson describes the events that took place at a hearing on his "contractors license" on April 21, 2022, based on his personal knowledge. (ECF 68 ¶ 9). However, the third and fourth sentences of this paragraph where Wilson summarizes Hutter's statements made at the hearing will be STRICKEN as inadmissable hearsay—that is, "an out-of-court statement being offered for the truth of the matter asserted." *Armstrong v. Browns Living, LLC*, No. 22-cv-329-wmc, 2023 WL 6037653, at *4 (W.D. Wis. Sept. 15, 2023). Additionally, the final sentence pertaining to the "unexpected retirement of James Krauhs" will be STRICKEN in its entirety as unsupported and speculative. *Pfeil*, 757 F.2d at 862; *Stagman*, 176 F.3d at 995. Therefore the motion to strike will be GRANTED IN PART and DENIED IN PART as to paragraph 9.

Paragraph 10. Defendants seek to strike paragraph 10 on the basis that it "contains irrelevant materials to this litigation." (ECF 75 at 4). In this paragraph Wilson sets forth information that he gained from public access about the permits that Hutter purportedly obtained to build Hutter's own residence in 2019. (ECF 68 ¶ 10). Wilson then speculates that Hutter did not meet the criteria associated with the permits and describes various failed inspections. (*Id.*). This paragraph consists of legal argument, inferences or opinions not grounded in observation or first-hand experience, and conjecture. *Pfeil*, 757 F.2d at 862; *Visser*, 924 F.2d at 659; *Stagman*, 176 F.3d at 995. Moreover, this paragraph seems merely an improper attempt to discredit Hutter generally. Therefore, the motion to strike will be GRANTED as to paragraph 10.

Paragraph 11. Defendants seek to strike paragraph 11 as "purely hearsay and the statements of third parties allegedly made to Wilson." (ECF 75 at 4). In this paragraph, Wilson

describes various projects that he was, or would have been, awarded. (ECF 68 ¶ 11). As Defendants assert, the paragraph does contain hearsay—specifically, the statements about what Wilson "was told by" other individuals. (*Id.*). But several other statements in the paragraph appear to be based on Wilson's personal knowledge. Therefore, the motion to strike will be GRANTED IN PART and DENIED IN PART such that after striking the hearsay, the paragraph will read in its entirety as follows:

> The plaintiff was awarded the Flats at Walnut Ridge project by CRG, a developer out of Indianapolis, until the project was delayed due to unforeseen trouble with an excavation contractor. This had an electrical cost of $4.7M. I was the front runner for a project called the Reserve on Park which had an electrical cost of $2.8M. Jacob Brown asked for my license number. After providing my license number, communication with Grand Contracting became almost nonexistent.

(ECF 68 ¶ 11).

Paragraph 12. Defendants seek to strike paragraph 12 asserting it "contains argument, hearsay and conclusory statements." (ECF 75 at 4). In this paragraph, Wilson summarizes Hutter's work experience and asserts that Hutter is "unqualified and lacked the experience to be put in the position of Building Commissioner." (ECF 68 ¶ 12). He further asserts that Hutter has "bent the rules to his benefit since being hired by the ACBD to inspect areas . . . . [and] has not been held accountable for his actions . . . ." (*Id.*). As such paragraph 12 is comprised of conclusory allegations lacking supporting evidence, legal argument, opinions not grounded in observation, and conjecture. *DeLoach*, 164 F.3d at 402; *Pfeil*, 757 F.2d at 862; *Visser*, 924 F.2d at 659; *Stagman*, 176 F.3d at 995. Accordingly, the motion to strike will be GRANTED as to paragraph 12.

*C. Wilson's Response Brief to Defendants' Summary Judgment Motion*

Next, Defendants ask that the Court strike Wilson's response brief (ECF 67) to their summary judgment motion because, like his reply brief, the response brief does not comply with the requirements of Local Rule 56-1 and contains "unverified facts or hearsay." (ECF 75 at 4). For the same reasons stated *supra*, the Court will DENY Defendants' motion to strike Wilson's response brief on the basis of technical deficits. *See Bonzani*, 2022 WL 18530866, at *1. The Court is capable of discerning and rejecting from consideration any argument, conclusion, or assertion that lacks support of evidence in the record. *See Rivera*, 319 F. Supp. 3d at 1018.

*D. The Second Affidavit*

Defendants also seek to strike the Sworn Affidavit #2 of Christopher Wilson ("the Second Affidavit"), which Defendants contend includes "inappropriate: (a) statements of issues presented to the Court; (b) argument; (c) legal conclusions; and/or (d) unverified facts." (ECF 75 at 5 (citing ECF 68-1 ¶ 6)). Wilson's response brief contains multiple references to the Second Affidavit. (*See* ECF 67).

Paragraph 6. Defendants contend that paragraph 6 of the Second Affidavit "is purely argument from Wilson, and is not appropriate for a statement of fact." (ECF 75 at 5). Indeed, in this paragraph Wilson criticizes the Building Commissioner's "verbiage" and contends there was "no reason to place a condition on the contractor's license" and that Hutter violated the law in doing so. (ECF 68-1 ¶ 6). Given that the entirety of this paragraph constitutes improper legal argument, the motion to strike will be GRANTED as to paragraph 6. *See Pfeil*, 757 F.2d at 862.

Paragraphs 8, 9, and 13-19. Defendants argue that paragraphs 8, 9, and 13 through 19 should be stricken for failure to comply with the relevant procedural rules. (ECF 75 at 5). In these paragraphs, Wilson cursorily recites that corresponding comments in his response brief to

10

Defendants' summary judgment motion "are true and accurate to the best of [his] knowledge." (*See* ECF 68-1 ¶¶ 8, 9, 13-19). While the Court is affording Wilson some leniency due to his *pro se* status, his attempt to incorporate by reference legal argument in his response brief as facts in his affidavit goes too far. "[I]t is . . . well established that pro se litigants are not excused from compliance with procedural rules." *Covington v. Chasteen*, No. 22-cv-5083, 2024 WL 1404379, at *4 (N.D. Ill. Feb. 20, 2024) (quoting *Pearle Vision, Inc. v. Romm*, 541 F3d 751, 758 (7th Cir. 2008)). Therefore, the motion to strike paragraphs 8, 9, and 13 through 19 will be GRANTED.

Paragraph 10. Defendants also seek to strike paragraph 10 on the basis that it "contain[s] irrelevant and argumentative language." (ECF 75 at 5). In this paragraph, Wilson refers to an inspection report for a property and then offers some context about the work his company completed there. (ECF 68-1 ¶ 10; ECF 68-2 at 47). While the last four sentences of the paragraph contain argument and conjecture, the remainder of the paragraph appears to be based on Wilson's personal knowledge. Accordingly, the motion to strike paragraph 10 will be GRANTED IN PART and DENIED IN PART, in that the last four sentences of the paragraph are STRICKEN but the preceding sentences will STAND.

Paragraph 11. Defendants contend paragraph 11 also "contain[s] irrelevant and argumentative language." (ECF 75 at 5). In this paragraph, Wilson simply states that his Exhibit 11 "is a true and unaltered copy of an email sent by Attorney Michael Hoffman to the plaintiff . . . ." (ECF 68-1 ¶ 11). Defendants contend this paragraph should be stricken because the email, which discusses scheduling, "is not an admission of fact or law." (ECF 75 at 5). The motion to strike will be DENIED as to paragraph 11, as the email speaks for itself.

Paragraph 20. Defendants assert that paragraph 20 should be stricken because it "continues to contain Wilson's argument," which "should be found only in his Response or

Reply, not in what he attempts to state are facts from a sworn statement." (*Id.* at 5-6). In this paragraph, Wilson revisits his argument attacking Hutter's credentials that he advanced in paragraph 9 of the First Affidavit. (*Compare* ECF 68-1 ¶ 20, *with* ECF 68 ¶ 9). For the same reasons stated *supra* as to paragraph 9 in the First Affidavit, paragraph 20 of the Second Affidavit will also be STRICKEN, with one exception: The Court will let the fifth sentence in paragraph 20 stand as based on Wilson's personal knowledge: "At a hearing on April 21, 2022, I questioned [Hutter] about how he was able to obtain those licenses in front of the Board of Directors." (ECF 68-1 ¶ 20). Therefore, the motion to strike will be GRANTED as to all but the fifth sentence.

In sum, Defendants' first motion to strike will be GRANTED IN PART and DENIED IN PART.

### E. Exhibits in ECF 68-2

When filing his reply brief, response brief, and affidavits, Wilson also submitted fifty-seven pages of materials or exhibits in support of his position. (ECF 68-2). Defendants seek to strike a portion of those materials, asserting they "contain random, irrelevant information that is also hearsay." (ECF 75 at 6).[4] Specifically, Defendants object to the following materials: an email from Wilson to Nelson Peters, an Allen County Commissioner; an email from Emily Almodovar, an Allen County employee, to Wilson; an email from Daniel Braun to Wilson; an email from Robert Langrel to Wilson; a newspaper article; and website information pertaining to Hutter. (ECF 75 at 6 (citing ECF 68-2 at 8-11, 39-46, 50-56)).

The motion to strike these materials will be DENIED. "Evidence presented in opposition

---

[4] Defendants acknowledge that the portion of the materials in Docket Entry 68-2 consisting of discovery responses would likely be admissible. (ECF 75 at 6; *see* ECF 68-2 at 21-38).

to a motion for summary judgment must be admissible in content, though it need not be in an admissible form." *Citizens for Cmty. Action v. City of Chi.*, 455 F. Supp. 2d 802, 808 (N.D. Ill. Sept. 13, 2006) (citing *Payne v. Pauley*, 337 F.3d 767, 775 n.3 (7th Cir. 2003)). The Court will not consider evidence that does not comply with Rule 56(e) or is not material to the resolution of Wilson's claims. *Id.* To reiterate, the Court is capable of discerning and rejecting from consideration any argument, conclusion, and assertion that lacks support of evidence in the record. *See Rivera*, 319 F. Supp. 3d at 1018.

For the foregoing reasons, Defendants' second motion to strike will be GRANTED IN PART and DENIED IN PART. The Court will now turn to the parties' respective summary judgment motions.

### III. THE PARTIES' SUMMARY JUDGMENT MOTIONS

Wilson moves for summary judgment on Counts 1, 3, 4, and 5 of his complaint, asserting that these counts "are based on indisputable facts" and that summary judgment in his favor on these counts is "warranted as a matter of law." (ECF 25 at 1). In response, Defendants filed their own summary judgment motion on these claims. (ECF 59).

*A. Statement of Material Facts*

1. <u>Background of the ACBD and Relevant Rules and Regulations</u>

In February 1983, the Board of Commissioners established and created the ACBD. (ECF 62 ¶ 1; ECF 63-1 at 2). The general purpose of the ACBD is to administer and enforce building, heating, ventilating, air conditioning, electrical, plumbing, sanitation, and standards adopted pursuant to law by Allen County, the City of Fort Wayne, and the Allen County Property Maintenance/Minimum Housing Code. (ECF 62 ¶ 1; ECF 63-1 at 2). The Board of Commissioners appoints the ACBD Board members. (ECF 62 ¶ 2; ECF 63-1 at 3). The ACBD

13

Board prescribes the standards, rules, and procedures for the issuance of licenses to perform work in the electrical, sanitary, plumbing, heating, ventilating and air-conditioning, commercial and industrial (non-sanitary) piping systems, and other construction businesses. (ECF 62 ¶ 3; ECF 63-1 at 5).

Title 6, Article 2, of the Allen County Code is the Building Code of Allen County, Indiana (the "Building Code"). (ECF 62 ¶ 4; ECF 63-2 at 1). The purpose of the Building Code is to provide minimum standards for the protection of life, limb, health, environment, public safety and welfare, and for the conservation of energy in design and construction of buildings and structures. (ECF 62 ¶ 4; ECF 63-2 at 1). The Building Code contains an administrative appeal process. (ECF 62 ¶ 5; ECF 63-1 at 7-8). Generally speaking, a decision by an ACBD administrative officer or inspector may be appealed to the entire ACBD Board. (ECF 62 ¶ 5; ECF 63-1 at 8). In turn, a decision of the ACBD Board is subject to review by the Board of Commissioners if requested within thirty days. (ECF 62 ¶ 5; ECF 63-1 at 8). Further, individuals aggrieved by a decision of the Board of Commissioners may appeal to a court in accordance with Indiana Code § 36-2-2-27. (ECF 62 ¶ 5; *see* ECF 63-1 at 8).

A permit must be obtained before beginning construction, addition, alteration, or repair of any building or structure. (ECF 62 ¶ 6; ECF 63-2 at 4). Permits are issued by the Building Commissioner. (ECF 62 ¶ 6; ECF 63-2 at 4). Whenever any work is done contrary to the provisions of the Allen County Code, the Building Commissioner may order the work stopped by notice in writing, and the persons engaged in the work shall stop until authorized by the Building Commissioner to proceed with the work. (ECF 62 ¶ 7; ECF 63-2 at 6).

The Board of Commissioner's Rules and Regulations dated May 7, 2003 (the "Rules and Regulations"), provide that during a suspension or revocation hearing before the ACBD Board, a

14

licensee may appear personally or by counsel and may cross-examine witnesses against him and produce evidence on his own behalf. (ECF 62 ¶ 9; ECF 63-3 at 14). The ACBD Board may allow any relevant evidence to be introduced, and a majority of the ACBD Board shall decide whether a license should be suspended or revoked. (ECF 62 ¶ 9; ECF 63-3 at 14). The ACBD Board may suspend a license for up to one year, revoke a license for a specified period of time, or revoke a license permanently. (ECF 62 ¶ 9; ECF 63-3 at 14).

Under Chapter 3 § C of the Rules and Regulations, if the Building Commissioner determines that "an emergency exists which requires immediate action to protect the public health or safety," the Building Commissioner may, without notice or hearing, issue an order revoking the license of the licensee "for charges related to incompetence, code violations, unethical conduct, fraud, or deceit in the performance of any function of the respective trade by such licensee" by giving actual notice or depositing in the United States Mail a registered or certified notice that states the license is revoked. (ECF 62 ¶ 10; ECF 63-3 at 14-15). The notice must "outline in writing what the Building Commissioner perceives to be of such great emergency or what actions by the licensee will or are causing the public to be harmed that the normal notice procedure cannot [be] followed." (ECF 63-3 at 15). A licensee shall give up his license immediately and comply with the revocation, but upon petition and written request to the ACBD shall be afforded a hearing as soon as possible before the ACBD Board. (ECF 62 ¶¶ 10-11; ECF 63-3 at 15). After the hearing, the ACBD Board may continue the order in effect, modify it, or revoke it. (ECF 62 ¶ 11; ECF 63-3 at 15).

All contractors and sub-contractors must be licensed by the ACBD to work in Allen County. (ECF 62 ¶ 12; ECF 63-4 at 1). The ACBD issues various levels of designations to electricians, with the highest level being Master Electrician, the second level being Journeyman

Electrician, and the third level being Electrical Apprentice registration. (ECF 62 ¶ 13; ECF 63-4 at 1). Master Electricians are allowed to supervise the work of Journeyman Electricians and Electrical Apprentices. (ECF 62 ¶ 14; ECF 63-4 at 2). A Master Electrician may use that designation to obtain an Electrical Contractors license, or alternatively, a firm or corporation seeking an Electrical Contractors license must have in its employ one full-time person who holds a Master Electrician designation. (ECF 62 ¶ 15; ECF 63-4 at 2). Only an individual or business with an Electrical Contractors license is authorized to secure a permit for electrical contracting. (ECF 62 ¶ 16; ECF 63-4 at 2).

    2. <u>ACBD Takes Action Against the Licenses Held by Wilson and AEY</u>

Defendant Joseph Hutter has been employed by ACBD since November 2019. (ECF 62 ¶ 17; ECF 63-4 at 1). Hutter has served as ACBD's Building Commissioner since October 2022. (ECF 62 ¶ 17; ECF 63-4 at 1).

ACBD issued a Master Electrician designation to Wilson individually (the "Master Electrician designation"), which he held in January 2023. (ECF 62 ¶ 18; ECF 63-4 at 2). ACBD issued an Electrical Contractors license (No. BD-35671) (the "Electrical Contractors license") to AEY, an Indiana limited liability company managed by Wilson. (ECF 62 ¶ 18; ECF 63-4 at 2, 49). Wilson used his Master Electrician designation to obtain the Electrical Contractors license for AEY. (ECF 62 ¶ 18; ECF 63-4 at 2).

On January 3, 2023, Hutter placed a condition on AEY's Electrical Contractors license that required AEY to obtain Hutter's approval on future permit applications. (ECF 62 ¶ 19; ECF 68-2 at 3-4, 9; ECF 63-4 at 3).[5] Hutter now claims in an affidavit that he did so "as a result of

---

[5] Apparently this was not ACBD's first rodeo with Wilson or AEY about licensure revocation. Wilson states that his (or AEY's) license was up for revocation previously in April 2022 "because of alleged violations of

several instances of AEY failing to abide by the Building Code . . . and ACBD's Rules and Regulations," and because "AEY continually had Electrical Apprentices working on AEY's job sites without the required supervision of Journeyman Electricians or [Wilson] himself, which is a violation of ACBD Rules and Regulations." (ECF 62 ¶¶ 19-20; ECF 63-4 at 3).

On January 19, 2023, Hutter emailed Wilson that after consulting with the ACBD Board, Wilson's request for permits on two job locations would be denied. (ECF 68-1 ¶ 7; ECF 68-2 at 4, 9). Also on January 19, 2023, Michael Hoffman, ACBD's counsel, responded to Wilson in an email that it was Hoffman's understanding the ACBD was "in receipt of information that has created a situation where it has decided to revoke your license." (ECF 68-2 at 6; *see* ECF 68-1 ¶ 11).

On January 20, 2023, Hutter sent a letter addressed to "Christopher Wilson c/o AEY Electrical Service LLC," entitled "STOP WORK ORDER AND EMERGENCY REVOCATION OF LICENSE" (the "Revocation Letter"). (ECF 62 ¶ 21; ECF 68-2 at 5, 9; ECF 63-4 at 3, 45). In the letter, Hutter stated that the ACBD "ha[d] witnessed unsafe workmanship on more than one occasion"—most recently at 9179 West Washington Center Road, 1725 Kentucky Avenue, and 3109 Oxford Street—and that "your Electrical Contractor license is hereby revoked in Allen County, effective immediately . . . ." (ECF 63-4 at 45; *see* ECF 62 ¶ 22; ECF 63-4 at 3). The letter further informed that "[i]mmediate revocation of licensure is necessary, due to your continual disregard for the Rules and Regulations and the Code, as well as the public health and safety." (ECF 68-2 at 5; *see* ECF 62 ¶ 22; ECF 63-4 at 3). The letter stated that Wilson could petition the ACBD in writing for a hearing before the ACBD Board about his licensure

---

the Rules and Regulations and incompetence." (ECF 68 ¶ 9).

revocation. (ECF 68-2 at 5; *see* ECF 62 ¶ 22; ECF 63-4 at 3). On January 23, 2023, Hutter

placed a second condition on AEY's license, indicating that the license was "on hold." (ECF 68-

2 at 3).[6]

Hutter now adds in his affidavit that he "determined . . . an emergency existed because

numerous safety issues related to AEY's permitted and unpermitted projects were brought to

[his] attention beginning in early 2022." (ECF 62 ¶ 23; ECF 63-4 at 3). Hutter states that of

particular concern was "loose wiring" at a residential job site at 9179 West Washington Center

Road, which "could have caused significant property damage or risked the health and safety of

individuals in or around the residence, including that of injury or death by electrocution." (ECF

62 ¶ 23; ECF 63-4 at 3).

### 3. Wilson Seeks Relief in State Court

On January 23, 2023, Wilson filed a Petition Requesting an Emergency Injunction (the

"Petition") with the Allen County Circuit Court, asking that the court issue an injunction

preventing ACBD from "revoking the petitioner's Contractor's License." (ECF 63-6 at 1; *see*

ECF 62 ¶ 24; ECF 68-2 at 9).[7] A hearing was held on the Petition on February 9, 2023. (ECF 62

¶ 25; ECF 63-7 at 1). On February 14, 2023, the Allen County Circuit Court issued an order

denying the Petition, noting that Wilson was "currently in the administrative process" and could

---

[6] The computer-generated evidence does not specifically differentiate whether it was AEY's Electrical Contractors license or Wilson's Master Electrician designation that was placed "on hold" (ECF 68-2 at 3), but the parties seem to agree in their briefing that it was AEY's Electrical Contractors license. (ECF 25 at 6; ECF 63-4 at 3). Yet, at the February 2, 2023, meeting, Brelje stated it was the Master Electrician designation that was revoked. (ECF 42 Audio of ACBD Special Board Meeting February 2, 2023 ("Audio 1") at 05:20-06:03; *see also id.* at 1:48:55-1:49:26, 1:51:10-1:51:21).

[7] Defendants assert that Wilson requested an injunction to preclude ACBD "from suspending AEY's Electrical Contractors License" (ECF 62 ¶ 24), but that is not how Wilson phrased it in his petition. (*Compare* ECF 62 ¶ 4, *with* ECF 63-6 at 1).

still work outside Allen County at the time, and as such, "the public interest would be disserved if [the court] were to contravene [ACBD's] expertise and unilaterally reinstate [Wilson's] license for the foreseeable future." (ECF 63-7 at 4-5; *see* ECF 62 ¶ 25). Wilson moved to reconsider the order denying the preliminary injunction and to amend his claim, but on March 7, 2023, after another hearing, the Allen County Circuit Court denied both motions, stating that Wilson could request an appeal once he exhausted the administrative process. (ECF 62 ¶¶ 26-27; ECF 63-8 to 63-12).

    4. The Administrative Process Before the ACBD

    The ACBD Board held a special meeting on February 2, 2023, to address the license-revocation matter, and both Hutter and Wilson attended. (ECF 62 ¶ 28; ECF 63-4 at 4, 46). At the beginning of the meeting, Wilson asked which license had been revoked. (ECF 42 Audio 1 at 05:20-06:05). Brelje responded that it was Wilson's Master Electrician designation. (*Id.* at 05:20-06:05; *see also id.* at 1:48:55-1:49:26, 1:51:10-1:51:21). Wilson and ACBD representatives presented evidence at the meeting. (ECF 62 ¶ 28; ECF 63-4 at 4, 46). After Wilson left the meeting, the ACBD Board passed a unanimous motion to suspend Wilson's Master Electrician designation for a four-year period and issue him a Journeyman Electrician designation in its stead. (ECF 42 Audio 1 at 2:26:25 to 2:27:15; *see* ECF 62 ¶¶ 29-30; ECF 68-2 at 7; ECF 63-4 at 4, 46).[8]

    The next day Hutter sent Wilson a letter informing him of the ACBD Board's decision

---

[8] Hutter claims in his affidavit that "the ACBD Board passed a unanimous motion to uphold the Building Commissioner's emergency suspension of AEY's Electrical Contractor License and to reduce [Wilson's] Master Electrician designation." (ECF 63-4 at 4). But the audio meeting of the February 2, 2023, meeting reflects only that the Board passed a unanimous motion to suspend Wilson's Master Electrician designation and to issue him a Journeyman Electrical license. (ECF 42 Audio 1 at 2:26:25-2:27:15).

"regarding the [ACBD's] revocation of your Master Electrical License during the special hearing held on February 2, 2023." (ECF 63-4 at 46). The letter stated that the ACBD Board passed a unanimous motion "to uphold the Building Commissioner's revocation of licensure based on Chapter 3 of the . . . Rules and Regulations, to revoke your Master Electrical License, and the Board issued to you a Journeyman Electrical license." (*Id.*). The revocation was for a "minimum of four (4) years." (*Id.*). The letter stated that the determination was based on the evidence and testimony at the hearing, including "[n]on-compliance with [ACBD] Rules & Regulations specifically related to code violations and engaging in unsafe practices"; "[f]ailure to comply with requirements related to obtaining permits, as well as regarding open permits"; and "[c]ontinued use of unsupervised Apprentices on site without a Journeyman present." (*Id.*; *see* ECF 62 ¶ 30; ECF 68-2 at 7).

On February 10, 2023, Wilson emailed the Board of Commissioners to request a hearing before them. (ECF 62 ¶ 31; ECF 68-2 at 8-11; ECF 63-4 at 4). On February 16, 2023, the Board of Commissioners sent Wilson a "Memorandum Setting Hearing," which indicated that they would review the requested appeal on March 1, 2023, at 8:30 am. (ECF 62 ¶ 31; ECF 63-4 at 4, 47). However, on February 24, 2023, the Board of Commissioners issued an "Order Cancelling March 1, 2023, Hearing," stating that it had "administratively determined" that Wilson's appeal of the ACBD Board's decision "revoking Christopher Wilson's Master Electrical License" was not "ripe for review"; and remanding the matter to the ACBD Board "to conduct a hearing on the license cited in the January 20, 2023, Notice of Emergency Revocation (the Electrical Contractors License)." (ECF 63-4 at 48; ECF 62 ¶ 32; ECF 63-4 at 4-5). Six days later, on March 7, 2023, ACBD reinstated Wilson's Master Electrician designation. (ECF 62 ¶ 33; ECF 63-4 at 5).

On March 9, 2023, the ACBD Board held a meeting about Wilson's appeal of the revocation of AEY's Electrical Contractors license. (ECF 62 ¶ 34; ECF 63-4 at 5, 49). When the Board refused to answer any of Wilson's questions about the February 2, 2024, hearing, Wilson objected to the meeting and left without presenting any evidence. (ECF 42 Audio of ACBD Board Meeting March 9, 2023 ("Audio 2"), at 05:20-06:03; ECF 62 ¶ 34; ECF 63-4 at 5, 49). After hearing evidence from an ACBD employee, the ACBD Board passed a unanimous motion to affirm the ACBD's decision revoking AEY's Electrical Contractors license. (ECF 62 ¶ 34; ECF 63-4 at 5, 49; ECF 42 Audio 2 at 31:37-32:47, 43:45-43:58). The ACBD Board provided the same reasons for revocation as in the February 3, 2023, letter. (ECF 62 ¶ 34; ECF 63-4 at 5, 49). The next day Hutter sent Wilson a letter informing him of the ACBD Board's decision "to uphold the [ACBD's decision] based on Chapter 3 of the . . . Rules and Regulations, to revoke your Electrical Contractor's License BD-35671." (ECF 63-4 at 49). In response, Wilson again requested a hearing before the Board of Commissioners. (ECF 62 ¶ 35; ECF 63-4 at 5).

On March 14, 2023, Wilson used his Master Electrician designation to obtain a new Electrical Contractors license for a second business entity called Near Me, LLC, which allowed him to work again in Allen County. (ECF 62 ¶ 36; ECF 63-4 at 5).

On March 29, 2023, the Board of Commissioners conducted a hearing regarding ACBD's revocation of AEY's Electrical Contractors license. (ECF 62 ¶ 35; ECF 63-4 at 5, 50). The Board of Commissioners heard argument from Wilson and ACBD's counsel; testimony from Wilson, Hutter, and ACBD's compliance officer; and received into evidence a transcript of the March 9, 2023, hearing on the license revocation and a packet of documents from Wilson. (ECF 62 ¶ 35; ECF 63-4 at 5, 50; *see* ECF 42 Audio of Board of Commissioners Meeting March 29, 2023 ("Audio 3"), at 03:30-1:37:27). The Board of Commissioners then unanimously approved a

motion that Wilson communicate with ACBD as to AEY's progress on open permits, clean them up, and pay the fines, and that if AEY is caught in violation of the Rules and Regulations, then AEY's license will be revoked, to be revisited in sixty days. (*Id.* at 1:37:28-1:38:10).

On March 31, 2023, the Board of Commissioners issued its "Notice of Decision Following Hearing of March 29, 2023." (ECF 62 ¶ 37; ECF 63-4 at 6, 50). The Notice informed that "[b]ased on the evidence presented at the hearing, the Board [of Commissioners]. . . determined that AEY . . . repeatedly violated [ACBD] rules and regulations, despite having previously been imposed with a 2-month license suspension in 2022." (ECF 63-4 at 50; *see* ECF 62 ¶ 37; ECF 63-4 at 6). The Notice further stated that the Board of Commissioners "rescind[ed] the indefinite revocation of license # BD35671 and issue[d] instead a suspension of [AEY's] license for the period of January 3, 2023, through July 3, 2023." (ECF 63-4 at 50; *see* ECF 62 ¶ 37; ECF 63-4 at 6).

On May 3, 2023, Wilson filed the instant case against Defendants. (ECF 1).

### B. Standard of Review

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770. When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* (citations omitted). The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.

A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* (citations omitted). However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

"When, as here, cross-motions for summary judgment are filed, we look to the burden of proof that each party would bear on an issue of trial; we then require that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007) (quoting *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)); *see also M.O. v. Ind. Dep't of Educ.*, 635 F. Supp. 2d 847, 850 (N.D. Ind. 2009). The assertion by one party "that there are no issues of material fact sufficient to prevent the entry of judgment in its favor does not bar that party from asserting that there are issues of material fact sufficient to prevent the entry of judgment as a matter of law against it." *M.O.*, 635 F. Supp. 2d at 850 (citation omitted); *see Zook v. Brown*, 748 F.2d 1161, 1166 (7th Cir. 1984). That is, cross-motions for summary judgment do not alter each party's burdens in the summary judgment analysis; each responsive party must establish a triable issue of fact to defeat the moving party's cross-motion for summary judgment. *See McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 504 n.4 (7th Cir. 2008), *abrogated on other grounds by Henson v. Santander Consumer USA, Inc.*, 582 U.S. 79 (2017); *M.O.*, 635 F. Supp. 2d at 850. The cross-motions "are treated separately." *See McKinney*, 548 F.3d at 504 n.4 (citation omitted).

*C. Discussion*

Wilson contends that there is no material factual dispute on this record and that he is entitled to judgment as a matter of law on Counts 1, 3, 4, and 5 of the amended complaint. (ECF 25 at 1). In these counts, Wilson claims that Defendants violated his due process rights under the Fourteenth Amendment by placing a condition on his ability to obtain permits and by denying AEY two permits (Count 1), by revoking AEY's Electrical Contractors license without pre-deprivation notice or hearing (Count 3), by revoking his Master Electrician designation without pre-deprivation notice or hearing (Count 4), and by the Board of Commissioners failing to intervene after receiving correspondence about the violation of his constitutional rights (Count 5). (ECF 7). Wilson also "seeks a ruling on the challenge of the constitutionality" of Chapter 3 § C of the Rules and Regulations—that is, the emergency revocation provision. (ECF 25 a 1, 6; *see* ECF 6).

In response, and in their own summary judgment motion, Defendants offer several arguments why Wilson's arguments fail and why they are entitled to judgment as a matter of law on these claims. (ECF 59, 61). The Court will address Defendants' overarching arguments first and then turn to the parties' arguments pertaining to Counts 1, 3, 4, and 5.

1. Standing to Bring Suit on AEY's Behalf

Defendants first argue that Wilson lacks standing to bring suit for any alleged injury to AEY given that Wilson filed suit in his individual capacity and not in the name of AEY, a limited liability company (LLC). (ECF 61 at 11-12). As such, Defendants contend that any claims based on alleged harm to AEY should be dismissed.

Indeed, "a limited liability company . . . is a separate legal entity from its members, just like a corporation is a separate legal entity from its shareholders." *Scruggs v. Wauwatosa Sav.*

24

*Bank*, No. 17-C-0157, 2017 WL 4326514, at *3 (E.D. Wis. Sept. 28, 2017) (citing *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 730 (7th Cir. 2014)). "Although an injury to [AEY] might, in turn, affect [Wilson] financially as a member of the limited liability company, this indirect financial injury is not an injury for which [Wilson] has standing to seek redress in federal court." *Scruggs*, 2017 WL 4326514, at *3 (citation omitted); *see also Fleming v. ISCO Indus., Inc.*, 750 F. App'x 62, 63 (2d Cir. 2019) (dismissing case filed *pro se* by the LLC's sole member, stating that the *pro so* plaintiff lacked standing to pursue the action on behalf of the LLC).

Nor will the Court afford Wilson, who is proceeding *pro se*, leave to amend his complaint to add AEY as an additional plaintiff. "[A] limited liability company cannot proceed pro se in federal court." *SelectSun GmbH v. Porter, Inc.*, No. 1:14-CV-215, 2015 WL 13710121, at *1 n.2 (N.D. Ind. Apr. 22, 2015) (citing *United States v. Hagerman*, 545 F.3d 579, 581-82 (7th Cir. 2008); *Robinson ex rel. Ind. Reg'l Council of Carpenters Pension Tr. Fund v. Vision Drywall, LLC*, No. 2:07-cv-190, 2010 WL 2674475, at *3 (N.D. Ind. June 29, 2010)). Wilson "cannot bring a federal claim on behalf of [AEY] because he is not a licensed attorney and therefore cannot represent [AEY] in federal court." *Scruggs*, 2017 WL 4326514, at *3 (citations omitted).[9]

Consequently, this suit can only go forward as to claims for alleged harm that Wilson suffered individually, not AEY. Therefore, Count 3 of the amended complaint advancing claims based on the emergency revocation and subsequent suspension of AEY's Electrical Contractors license will be DISMISSED without prejudice. Also, Count 1, which advances a due process claim based on a condition placed on AEY's Electrical Contractors license on January 3,

---

[9] Furthermore, any motion to amend the complaint now would be untimely, given that Wilson's deadline to seek leave of Court to amend the pleadings passed on October 2, 2023. (ECF 21).

2023—that no permits would issue without Hutter's approval—and the January 19, 2023, denial of two permits to AEY (ECF 68-2 at 3-4) will be DISMISSED without prejudice. To explain, while the email between Wilson and Hutter about the permits was addressed to Wilson, rather than AEY (ECF 68-2 at 4), Chapter 1 § B.1.a of the Rules and Regulations provides that only a licensed electrical contractor can obtain a permit from the ACBD. (ECF 63-3 at 5; *see* ECF 63-4 at 2 ("[O]nly an individual or business with an Electrical Contractors License is authorized to secure a permit for electrical contracting.")*.* As such, the claim in Count 1 pertains to AEY, who held the Electrical Contractors license, rather than Wilson individually.

2. Inapplicability of 18 U.S.C. §§ 241 and 242

Next Defendants challenge Wilson's claims to the extent they attempt to seek relief under 18 U.S.C. §§ 241 and 242. (ECF 61 at 12-13; *see* ECF 7 ¶¶ 11, 13, 34, 50, 63). As Defendants point out, these statutes create criminal liability for certain deprivations of civil rights and conspiracy to deprive civil rights. (ECF 61 at 12).

Sections 241 and 242 do not create private rights of action or contain provisions authorizing an award of damages in a civil suit. *See Stuckey v. Hous. Auth. of Cnty. of Cook*, No. 16-cv-03443, 2017 WL 11606727, at *2 (N.D. Ill. Sept. 18, 2017) ("[18 U.S.C. §§ 241, 245, 1011, and 1028] impose[] criminal liability in the event of a violation, but they do not allow for a private right of action." (collecting cases)); *Ihmoud v. Erwin*, No. 1:06-cv-1414-SEB-VSS, 2006 WL 3210045, at *1 (S.D. Ind. Nov. 3, 2006) ("18 U.S.C. §§ 241 and 242 provide no private right of action and cannot form the basis of a civil suit." (citation omitted)). As such, "[Wilson's] Title 18 claims fail to state a valid cause of action because [Wilson], as a private citizen, may not file a lawsuit under Title 18 of the United States Code." *Huston v. Slanina*, No. 12 C 4582, 2012 WL 4464301, at *2 (N.D. Ill. Sept. 24, 2012) (citing *Maine v. Taylor*, 477 U.S. 131, 136 (1986)).

"The power to prosecute criminal cases in the federal courts lies solely with the United States and its attorneys." *Id.* (citation and footnote omitted).

Therefore, to the extent any claims are based *solely* on §§ 241 and 242, the claims cannot survive. *See McGee v. Nissan Motor Acceptance Corp.*, 619 F. App'x 555, 555 (7th Cir. 2015) (dismissing *pro se* plaintiff's claims under 18 U.S.C. §§ 241 or 1341 as "federal criminal statutes that do not provide a private right of action"); *Stuckey*, 2017 WL 11606727, at *2 (dismissing the *pro se* plaintiff's claims resting on statutes that do not provide a private right of action to individual plaintiffs); *Ihmoud*, 2006 WL 3210045, at *1 (same). Having said that, "[a] complaint need not identify a legal theory, and specifying an incorrect theory is not fatal." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992); *see also Clubb v. Ernest*, No. 18 CV 50197, 2019 WL 4934598, at *1 (N.D. Ill. Oct. 7, 2019). Here, Wilson also brings his claim under the due process clause of the Fourteenth Amendment and 42 U.S.C. § 1983. (ECF 7). Consequently, the Court will not dismiss Wilson's claims solely based on his misplaced inclusion of 18 U.S.C. §§ 241 and 242 in the amended complaint.

3. Absolute Immunity as to Defendants Hutter and Brelje

Defendants also argue that individual Defendants Hutter and Brelje are entitled to absolute immunity from Wilson's § 1983 claims. (ECF 61 at 13-14). On the briefing submitted, however, Defendants fail to carry their burden of showing that Hutter and Brelje are entitled to this affirmative defense.

"The Supreme Court has recognized that some government officials perform 'special functions,' which, because of their similarity to functions that would have been immune when Congress enacted § 1983, deserve absolute protection from damages liability." *Hobbs. v. Cappelluti*, 899 F. Supp. 2d 738, 766 (N.D. Ill. Sept. 28, 2012) (internal quotation marks

27

omitted) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 268-69 (1993)). "To determine whether a defendant qualifies for absolute immunity, the court applies a 'functional approach,' which 'looks to the nature of the function performed, not the identity of the actor who performed it.'" *Id.* (citing *Buckley*, 509 U.S. at 269). The Supreme Court described several characteristics of quasi-judicial functions that a court should consider when assessing whether a public official qualifies for absolute immunity:

> (1) the need to assure that the individual can perform his functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for damages actions as a means for controlling unconstitutional conduct; (3) the insulation from political influence; (4) the importance of precedent; (5) the adversarial nature of the process; and (6) the correctability of error on appeal.

*Heyde v. Pittenger*, 633 F.3d 512, 517 (7th Cir. 2011) (citing *Butz v. Economou*, 438 U.S. 478, 512 (1978)).

Typically, if the function was "quasi-judicial, the [official] enjoys absolute immunity. If the function was administrative or investigatory, the [official] enjoys only qualified immunity." *Spiegel v. Rabinovitz*, 121 F.3d 251, 256 (7th Cir. 1997) (citing *Henderson v. Lopez*, 790 F.2d 44, 46 (7th Cir. 1986)).[10] "Absolute immunity is only accorded for limited functions; the presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Wilson v. Kelkhoff*, 86 F.3d 1438, 1443 (7th Cir. 1996) (internal quotation marks and brackets omitted) (citing *Burns v. Reed*, 500 U.S. 478, 486-87

---

[10] Officials enjoy qualified immunity from suit to the extent that their conduct "could reasonably have been thought consistent with the rights they are alleged to have violated." *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1013 (7th Cir. 2006) (citations and quotation marks omitted); *see also Hobbs*, 899 F. Supp. 2d at 763. The courts "follow a two-step analysis" in determining whether defendants are entitled to the defense of qualified immunity. *Sornberger*, 434 F.3d at 1013. The court first asks "whether the plaintiff has asserted the violation of a federal constitutional right." *Id.* (citations omitted). "If such a violation did occur, [the court] then determine[s] whether the right was so clearly established at the time of the alleged violation that a reasonable [official] would know that his actions were unconstitutional." *Id.* (citations omitted).

(1991)).

Courts have afforded absolute immunity to public officials in the following scenarios: a county board of review's decision on disputed property assessments, *Heyde*, 633 F.3d at 517-19; *see also Satkar Hosp. Inc. v. Cook Cnty. Bd. of Rev.*, 819 F. Supp. 2d 727, 731-32 (N.D. Ill. May 20, 2011); a local liquor commissioner's suspension or revocation of a liquor license, *Brunson v. Murray*, 843 F.3d 698, 710 (7th Cir. 2016); parole board members granting, denying, or revoking parole, *Kelkhoff*, 86 F.3d at 1444; a director of state professional regulation's revocation of a physician's license, *Wilson v. Stewart*, 621 F. Supp. 3d 900, 902 (N.D. Ill. Aug. 16, 2022); a board of examiner's suspension of a plumbing and heating contractor's license, *Pippen v. Scales*, 822 F. Supp. 305, 309 (M.D.N.C. 1993); and members of a residential district preservation commission issuing, modifying, or refusing to issue certificates of appropriateness, *Boczar v. Kingen*, No. IP 99-0141-C-T/G, 1999 WL 33102132, at *9 (S.D. Ind. Aug. 12, 1999).

On the other hand, courts have found the following duties to be ministerial and denied public officials absolute immunity: a parole officer's actions involving day-to-day duties in the supervision of a parolee, *Dawson v. Newman*, 419 F.3d 656, 662 (7th Cir. 2005); a clerk of court's duty to maintain the official court record, *Snyder v. Nolen*, 380 F.3d 279, 288-89 (7th Cir. 2004); and a sheriff or deputies whose misconduct involved the manner in which they enforced a judge's order, *Richman v. Sheahan*, 270 F.3d 430, 434-48 (7th Cir. 2001). Further, courts around the country appear split in their application of absolute immunity to a zoning board's decision denying permit applications. *See Adam Cmty. Ctr. v. City of Troy*, 482 F. Supp. 3d 640, 651 (E.D. Mich. 2020) (collecting cases).

Defendants assert that the actions of Hutter and Breljie were "quasi-judicial acts deserving of absolute immunity." (ECF 61 at 14). They contend Hutter and Breljie acted within

the scope of their employment or appointment when they revoked Wilson's Master Electrician designation—or as Defendants phrase it, "reduced" it to a Journeyman Electrician. (*Id.* at 2, 14). However, in making this argument, Defendants fail to analyze the relevant factors in federal case law necessary to convince the Court that absolute immunity applies here. *See Butz*, 438 U.S. at 512 (identifying the relevant factors to consider for absolute immunity in a federal case).

The public official seeking the benefit of absolute immunity bears the burden of proving it is justified. *Kelkhoff*, 86 F.3d at 1443. "[T]he [C]ourt declines to undertake the analysis [Defendants] should have undertaken in the first instance." *Swenson v. Siskiyou Cnty.*, No. 2:08-CV-1675 KJM CMK, 2014 WL 6390656, at *13 (E.D. Cal. Nov. 17, 2014); *see Baliga v. Smith*, 594 F. Supp. 3d 1084, 1088 (S.D. Ind. 2022) (denying quasi-judicial immunity to defendants where they relied on conclusory statements that did not consider any of the relevant factors under federal law); *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 366 (S.D.N.Y. 2011) (denying quasi-judicial immunity to defendants where they failed to argue the relevant factors under federal law). Consequently, on the record presented, the Court finds that Defendants have not carried their burden of establishing that Hutter or Breljie are entitled to quasi-judicial immunity.[11] As such, Defendants' summary judgment motion will be

---

[11] Defendants do not argue in the alternative that Hutter or Breljie are entitled to qualified immunity. Nor do Defendants suggest that Defendant Krauhs is entitled to absolute or qualified immunity. Consequently, the Court will not take up that analysis here. *See Harper v. Dart*, No. 13 C 9265, 2014 WL 13113665, at *1 (N.D. Ill. Aug. 5, 2014) ("The Court will not do a party's legal research for it nor make a party's arguments for it." (citation omitted)).

Also, Defendants do not argue that Defendant Board of Commissioners is entitled to absolute immunity, and wisely so. "Unlike individuals sued in their individual capacities, . . . [governmental] entities are not entitled to absolute immunity." *Capra v. Cook Cnty. Bd. of Rev.*, 733 F.3d 705, 710 (7th Cir. 2013); *see Hernandez v. Sheahan*, 455 F.3d 772, 776 (7th Cir. 2006) ("[U]nits of government are not entitled to immunity in suits under § 1983. Official immunities (judicial, legislative, absolute, qualified, quasi, and so on) are personal defenses designed to protect the finances of public officials whose salaries do not compensate them for the risks of liability under vague and hard-to-foresee constitutional doctrines. That justification does not apply to suits against units of state or local government, which can tap the public fisc.").

DENIED as to this affirmative defense at this juncture, though the Court will afford Defendants leave to file a revised summary judgment motion on this defense.

### 4. Wilson's Due Process Claim as to Revocation of his Master Electrician Designation

The Court now turns to Wilson's procedural due process claim based on the revocation of his Master Electrician designation, which Wilson asserts is "constitutionally protected property . . . . protected from deprivation without . . . due process." (ECF 26 at 2). This claim is advanced in Count 4 of Wilson's amended complaint. (ECF 7 at 7-8).

Procedural due process "imposes basic procedural obligations on the government—in most cases, prior notice and a meaningful opportunity to be heard—before it deprives a person of life, liberty, or property." *Manley v. Law*, 889 F.3d 885, 890 (7th Cir. 2018) (citation omitted). "The two elements of a procedural due process claim are (1) deprivation of a protected interest and (2) insufficient procedural protections surrounding that deprivation." *Tucker v. City of Chi.*, 907 F.3d 487, 491 (7th Cir. 2018) (citation and internal quotation marks omitted).

#### a. The Parties' Arguments

Wilson asserts the record is undisputed that the Master Electrician designation was "revoked without warning or notice." (ECF 26 at 2). He argues that Defendants "knew ahead of the deprivation and a required notice or hearing should have been afforded," making a "post deprivation hearing . . . moot." (*Id.*). Wilson further argues that the February 2, 2023, hearing was "one sided and unfair." (*Id.*). Therefore, as Wilson sees it, he is entitled to judgment as a matter of law on his due process claim based on the revocation of his Master Electrician designation.

In response, Defendants concede that a government-issued license to perform certain types of work that allow the holder to earn his livelihood generally is a protected property

interest. (ECF 61 at 15). But Defendants further note an exception exists in that "where a statute or ordinance allowing revocation or suspension of a license contains language of offering discretion to the licensing agency, there is no property interest." (*Id.*). Therefore, as Defendants' argument goes, "[t]he licenses and permits issued by the ACBD are subject to the discretion of the officers and the Board and therefore there is no property interest of any holder," causing Wilson's due process claim to fail as a matter of law. (*Id.* at 16).

### b. Protected Property Interest

"'[T]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it,' and 'more than a unilateral expectation of it.'" *Lukaszczyk v. Cook Cnty.*, 47 F.4th 587, 605 (7th Cir. 2022) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). "Instead, the person must 'have a legitimate claim of entitlement to it.'" *Id.* (citing *Roth*, 408 U.S. at 577). "[I]t is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily determined." *Id.* (citing *Roth*, 408 U.S. at 577). "The right to a hearing provides an opportunity to vindicate those claims." *Id.* (citing *Roth*, 408 U.S. at 577).

"Government-issued licenses to perform certain types of work that allow the license holders to earn their livelihoods are a form of government-created property—an entitlement—and have long been considered property protected by the Fifth and Fourteenth Amendments." *Simpson v. Brown Cnty.*, 860 F.3d 1001, 1006 (7th Cir. 2017) (citations omitted); *see Feiza v. Ill. L. Enf't Training & Standards Bd.*, No. 23 C 1905, 2023 WL 6276520, at *6 (N.D. Ill. Sept. 26, 2023). "Of course, a state can set conditions for when a license should be revoked, and broad discretion to freely suspend or revoke a license might destroy a property interest[.]" *Feiza*, 2023 WL 6276520, at *6 (citation omitted); *see Town of Castle Rock v.*

32

*Gonzales*, 545 U.S. 748, 756 (2005) ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." (citation omitted)). "Neither of those legal principles changes the bottom line: a licensee retains the right to due process through suspension and revocation." *Feiza*, 2023 WL 6276520, at *6. "While that right is often limited to contesting the applicability of a statutory provision to the revocation, . . . that due process must, nonetheless, be carefully guarded." *Id.*

Defendants argue that Wilson's due process claim fails at the outset because the licenses, permits, and designations issued by ACBD are subject to the discretion of the officers and Board, and as such, do not give rise to a protected property interest. (ECF 61 at 16). Specifically, Defendants point to Chapter 3 § C of the Rules and Regulations that allow the Building Commissioner to revoke a license for charges of incompetence, code violations, unethical conduct, fraud, or deceit  without notice or hearing if the Building Commissioner determines that "an emergency exists which requires immediate action to protect the public health or safety." (ECF 61 at 17; ECF 63-3 at 14-15). According to Defendants, because the Rules and Regulations afford Hutter the discretion to act in the event of an emergency, Wilson does not have a property interest in the Master Electrician designation. (*Id.*); *see Baliga*, 594 F. Supp. 3d at 1090 (commenting that an ordinance permitting a committee to consider factors pertaining "to the public health, safety and welfare" vests the committee with discretion).

But the provision that Defendants cite does not reflect the entirety of the Building Code and Rules and Regulations. Relevant to this dispute, § 6-2-3 of the Building Code provides:

> The Building Commissioner is hereby authorized and directed to administer and enforce all of the provisions of this Code. Whenever in the building regulations, it is provided that anything must be done to the approval of or subject to the direction of the Building Commissioner or any other officer of the [ACBD], this shall be construed to give such officer only the discretion of determining whether

the rules and standards established by ordinance has been complied with; *and no such provision shall be construed as giving any officer discretionary powers as to what such regulations, codes, or standards shall be, or power to require conditions not prescribed by ordinances or to enforce ordinance provisions in an arbitrary or discriminatory manner.*

(ECF 63-2 at 1 (emphasis added)). Further, § 6-2-14 provides that the Building Commissioner

may issue a stop-work order "[w]henever any work is being done contrary to the provisions of

this Code." (*Id.* at 6).

In turn, Chapter 3 § A of the Rules and Regulations provides:

If any person, firm, or corporation obtains a license, or any renewal thereof, by fraud, falsehood, misrepresentation, or deceit . . . ; or if the Building Commissioner or a representative of the Department prefers charges in writing against a licensee, *said charges relating to incompetence, code violations, unethical conduct, fraud, or deceit in the performance of any function of the respective trade by such licensee*, then the Board shall fix a time, date, and place for hearing such matter. At least ten (10) days prior thereto, the Board shall serve a written copy of any such charges and notice of the time and place of the hearing there upon the licensee . . . . The Board may cause an investigation of the facts to be made in such matters and may appoint investigators to conduct the investigation as it sees fit.

(ECF 63-3 at 14 (emphasis added)). And significant to this dispute, Chapter 3 § C of the Rules

and Regulations provides:

If the Building Commissioner determines that *an emergency exists which requires immediate action to protect the public health or safety*, he may without notice or hearing issue an order revoking the license of the licensee for charges related to incompetence, code violations, unethical conduct, fraud, or deceit in the performance of any function of the respective trade by such licensee by giving actual notice or depositing in the United States Mail a registered or certified notice that said license is revoked. Said notice by the Building Commissioner shall outline in writing what the Building Commissioner perceives to be of such great emergency or what actions by the licensee will or are causing the public to be harmed that the normal notice procedure cannot [be] followed. . . . Any such licensee shall give up his license immediately and shall comply therewith immediately with the revocation as ordered by the Building Commissioner, but upon petition and written request to the Building Department shall be afforded a hearing as soon as possible before the Building Department Board.

34

(*Id.* at 14-15 (emphasis added)).

Having duly considered the Building Code and Rules and Regulations in context, the Court weighs heavily that "[a] long line of precedent recognizes that when a person is awarded a license, [he] has a property interest in that same license." *Feiza*, 2023 WL 6276520, at *5; *see Barry v. Barchi*, 443 U.S. 55, 64 n.11 (1979); *Mackey v. Montrym*, 443 U.S. 1, 10 n.7 (1979); *Dixon v. Love*, 431 U.S. 105, 112 (1977); *Simpson*, 860 F.3d at 1006. The Court further concludes that though "[t]he [emergency revocation] provision does add a wrinkle into the legal analysis, . . . it does not eliminate the property interest." *Feiza*, 2023 WL 6276520, at *6. The Rules and Regulations "engendered a clear expectation of continued enjoyment of a license" absent charges of incompetence, code violations, unethical conduct, fraud, or deceit in the performance of the licensee's trade, giving a licensee a "legitimate claim of entitlement . . . that he may invoke." *Barry*, 443 U.S. at 64 n.11 (citations and internal quotation marks omitted) (finding a property interest existed in a horse trainer's license though the statute allowed for immediate suspension upon a showing that his horse had been drugged or that he was negligent in failing to prevent the drugging); *Spinelli v. City of N.Y.*, 579 F.3d 160, 169 (2d Cir. 2009) ("Although there may be no protected property interest where the licensor has broad discretion to revoke the license, here, such discretion was carefully constrained." (internal citation omitted)).

Therefore, the Court concludes as a matter of law that Wilson has satisfied the first prong of his due process claim based on the revocation of his Masters Electrician designation.[12]

---

[12] The Court has not taken up the issue of whether a property right exists in a permit—much less a permit application—given that the Court has concluded *supra* that Wilson does not having standing to advance that claim on behalf of AEY. Nor did the parties cite case law pertaining to permits in their briefing.

*c. Procedural Due Process Protections Surrounding the Deprivation*

Turning to the second prong of Wilson's due process claim, Defendants argue that even if the Court does find a property interest exists in the Master Electrician designation, Wilson was afforded appropriate due process, dooming his due process claim. (ECF 61 at 18-20). Wilson disagrees, asserting that the record is undisputed that his Master Electrician designation "was revoked without warning or notice" (ECF 26 at 2), entitling him to judgment as a matter of law.

"The general test for determining what process is due and when was set out in *Mathews v. Eldridge*, 424 U.S. 319 . . . (1976)." *Simpson*, 860 F.3d at 1006. "*Mathews* identified three factors to be balanced: first, the private interest at stake; second, the risk of erroneous deprivation and the value, if any, of additional procedural safeguards; and third, the government's countervailing interests." *Id.* (citing *Mathews*, 424 U.S. at 335). The basic rights guaranteed by due process are: "notice of the intended adverse government action and an opportunity to be heard in response, although more elaborate procedural rights—such as the rights to present evidence, to confront adverse witnesses, and to be represented by counsel—may apply in cases in which vital private interests are at risk." *Id.* (citing *Goldberg v. Kelly*, 397 U.S. 254 (1970)). "The spectrum of due process requirements includes, at one end, a full trial-type evidentiary hearing before a deprivation occurs . . . , and at the other end, procedures conducted after summary action has been taken in response to an emergency . . . ." *Id.* (citations omitted).

*1. Private Interest*

As to the first factor, Defendants seemingly concede for purposes of summary judgment that Wilson has "a strong interest" in his Master Electrician designation. (ECF 61 at 19). Indeed, Wilson's submissions reflect that his ability to earn a livelihood depends on his Master

36

Electrician designation. (*See* ECF 68 ¶ 11; ECF 68-2 at 10, 41-42).[13] "The weight of the private interest in continued employment 'cannot be gainsaid.'" *Id.* at 1008 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985)). "The Supreme Court has 'frequently recognized the severity of depriving a person of the means of livelihood.'" *Id.* (citing *Loudermill*, 470 U.S. at 543). Therefore, Wilson has satisfied the private-interest factor.

### 2. Risk of Erroneous Deprivation

Turning to the second factor, the Court assesses "the risk that, under the established procedures . . . , a deprivation might occur erroneously." *Id.* at 1009. Here, the Building Code affords the Building Commissioner "the discretion of determining whether the rules and standards established by ordinance has been complied with" (ECF 63-2 at 1), and the authority to "order the work stopped by notice in writing" "[w]henever any work is being done contrary to the provisions of [the Building] Code" (*id.* at 6).

Further, the Rules and Regulations enable the Building Commissioner to, if he "determines that an emergency exists which requires immediate action to protect the public health or safety," revoke a license without notice or hearing "for charges related to incompetence, code violations, unethical conduct, fraud, or deceit in the performance of any function of the respective trade . . . ." (ECF 63-3 at 14-15). In doing so, the Building Commissioner must give notice that the license has been revoked and outline in writing "what the Building Commissioner perceives to be of such great emergency or what actions by the

---

[13] While Wilson could still have worked outside of Allen County, the Seventh Circuit has stated that "[t]he mere possibility of some other work in some other place must seem cold comfort to [those] who lose their jobs or professional licenses." *Simpson*, 860 F.3d at 1009. "While a fired worker may find employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which he left his previous job." *Id.* (citing *Loudermill*, 470 U.S. at 543). "This is especially true where a license revocation forces a person not only to find a new job but also to transition to a new field." *Id.*

licensee will or are causing the public to be harmed that the normal notice procedure cannot [be] followed." (*Id.* at 15). The licensee must give up his license immediately; however, the ACBD Board must afford the licensee a hearing as soon as possible "upon petition and written request." (*Id.*).

Consequently, given the foregoing provisions, a risk exists that someone like Wilson could have his license revoked without prior warning or pre-deprivation opportunity to be heard. *See Simpson*, 860 F.3d at 1008 ("[The county official] was not acting unpredictably or breaking the rules: he did exactly what the ordinance told him to do. The possibility of license revocation without due process was not unforeseeable. It was authorized in the ordinance itself."). Nor do Defendants argue that such risk does not exist. (*See* ECF 61 at 19). "When a deprivation is irreversible—as is the case with a license suspension that can at best be shortened but cannot be undone—the requirement of some kind of hearing before a final deprivation takes effect is all the more important." *Simpson*, 860 F.3d at 1009 (quoting *Mackey v. Montrym*, 443 U.S.1, 21 (1979)).

### 3. Government Interest

Turning to the third factor, "public health is one of the oldest examples of a government interest that can justify summary deprivation of property." *Id.* (citation, brackets, and internal quotation marks omitted); *see Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 300-01 (1981) (permitting emergency orders to cease mine operations to avoid imminent disasters). Defendants revoked Wilson's Master Electrician designation on an emergency basis as a threat to public health and safety. (ECF 68-2 at 5, 7).

The Revocation Letter sent to Wilson on January 20, 2023, cited "unsafe workmanship

on more than one occasion" and "continual disregard for the Rules and Regulations and the Code, as well as the public health and safety . . . . which has culminated in a threat to the public health and safety." (*Id.* at 5).[14] It further stated that work completed at 9179 West Washington Center Road, 1725 Kentucky Avenue, and 3109 Oxford Street "has various code violations." (*Id.* at 5). Defendants argue that Wilson was not entitled to pre-deprivation due process because the emergency situation warranted summary action under the Rules and Regulations.

But the current record is not sufficiently factually developed at this juncture for the Court to discern the proper weighting and balancing of the government interest factor. The Revocation Letter does not explain how the problems at the three properties identified therein "were both so serious and so urgent as to justify summary action by the County, without an opportunity for [Wilson] to be heard." *Simpson*, 860 F.3d at 1009. And while Hutter now adds in an affidavit that "loose wiring" found in an inspection at 9179 West Washington Center Road "could have caused significant property damage or risked the health and safety of individuals in or around the residence, including that of injury or death by electrocution" (ECF 63-4 at 3), that, standing alone, may not necessarily establish that the immediate revocation of Wilson's Master Electrician designation was warranted, rather than just a stop-work order for the 9179 West Washington Center Road property under § 6-2-14 of the Building Code.

Having said that, the audio recordings of the February 2, March 9, and March 29, 2023, meetings do include a lengthy list of violations at various jobs sites—some described as

---

[14] The Revocation Letter dated January 20, 2023, was addressed to "Christopher Wilson c/o AEY Electrical Service LLC," rendering it a bit unclear on its face as to whether it was revoking solely AEY's Electrical Contractors license or Wilson's Master Electrician designation as well. (*Id.*). Yet, the parties seem to agree that the Revocation Letter intended to revoke AEY's Electrical Contractors license. (*See* ECF 25 at 3; ECF 63-4 at 3-4.). The February 3, 2023, letter, however, made clear that ACBD also revoked Wilson's Master Electrician designation. (ECF 68-2 at 7).

dangerous to the public. (ECF 42). However, the recordings are unclear whether these violations were attributed to solely AEY, or Wilson too. (*Id.*). If this lengthy list of violations were attributable to Wilson individually, and were "so serious and so urgent as to justify summary action by the County, without an opportunity for [Wilson] to be heard," *Simpson*, 860 F.3d at 1009, this does not square with the ACBD's decision to reinstate Wilson's Master Electrician designation just five weeks later. Consequently, the Court cannot discern on this factual record whether Wilson was denied pre-deprivation due process when ACBD revoked his Master Electrician designation on an emergency basis and issued him a Journeyman Electrical designation in its stead.

Defendants argue that regardless, "sufficient post-deprivation process existed" because Wilson requested, and was afforded, a post-deprivation hearing before the ACBD Board on February 2, 2023, at which he had the opportunity to present evidence. (ECF 61 at 19; *see* ECF 63-4 at 4). And in any event, the ACBD Board reinstated Wilson's Master Electrician designation on March 7, 2023, after Wilson filed a request for hearing before the Board of Commissioners. (ECF 63-4 at 5, 48). But the fact that ACBD reinstated Wilson's Master Electrician designation five weeks after revoking or suspending it does not undo the harm Wilson suffered as a result of that revocation or suspension. *See Simpson*, 860 F.3d at 1009 (referring to a deprivation as "irreversible" when "a license suspension . . . can at best be shortened but cannot be undone" (quoting *Mackey*, 443 U.S. at 21)). Nor does it appear that Wilson has received any compensation for his economic injury. *See id.* at 1012 ("The requirement that an adequate post-deprivation remedy for an economic injury must provide some form of compensation parallels the requirement of just compensation under the Takings Clause

of the Fifth Amendment."). "Reinstatement of a [Master Electrician designation], like reinstatement of a liquor license, does not address the financial losses resulting from an inability to operate one's business for some length of time." *Id.* at 1013.

In sum, the factual record is not sufficiently developed at this juncture with respect to the "great emergency" (ECF 63-3 at 15) that ACBD claims existed to revoke or suspend Wilson's Master Electrician designation without notice and hearing under Chapter 3 § C of the Rules and Regulations. As such, the Court cannot determine as a matter of law whether Wilson was wrongfully denied the pre-deprivation process otherwise due to him under Chapter 3 § A of the Rules and Regulations. Further, the Court cannot conclude on this record that sufficient post-deprivation process was afforded Wilson given that the record does not reflect any post-deprivation remedy for his economic injury. Consequently, on this record, both parties' summary judgment motions will be denied as to Wilson's due process claim stemming from the revocation of his Master Electrician designation.

5. <u>Wilson's Failure-to-Intervene Claim Against the Board of Commissioners</u>

Wilson also seeks summary judgment in his favor on the failure-to-intervene claim against the Board of Commissioners, which is in Count 5 of his amended complaint. (ECF 25 at 5-6). In that count, Wilson alleges that the Board of Commissioners has "a duty to Allen County citizens to intervene and stop civil rights being violated," but the Board failed to do so when he sent them various communications about the civil rights violations he allegedly experienced. (ECF 7 ¶ 64).

Wilson, however, fails to meaningfully develop and support this argument in his summary judgment motion or briefs. That is, he fails to cite a single case in which a local

41

government official has been held liable for "failure to intervene" outside the use of excessive force by police officers. (*See* ECF 25 at 5 (citing *Sanchez v. City of Chi.*, 700 F.3d 919, 927 (7th Cir. 2012); *Yang v. Hardin*, 37 F.3d 282, 284 (7th Cir. 1994))). Nor do Defendants address Count 5 and Wilson's failure-to-intervene legal theory—or for that matter, any other legal theory likely intended by Wilson against the Board of Commissioners in Count 5—in their response brief to Wilson's summary judgment motion or in their own summary judgment motion.

"The Court will not make arguments for the parties, nor should the parties expect that the Court will consider arguments that the parties could have made, but did not." *Fair Hous. Ctr. of Cent. Ind., Inc. v. Rainbow Realty Grp., Inc.*, No. 1:17-cv-01782-JMS-TAB, 2022 WL 6158365, at *1-2 (S.D. Ind. Oct. 7, 2022) ("[A] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is a good point despite a lack of supporting authority or in the face of contrary authority, forfeits the point." (citation omitted)). Consequently, the Court will summarily DENY both parties' summary judgment motions on Wilson's failure-to-intervene claim advanced in Count 5 of his amended complaint, but not preclude either party from filing a revised summary judgment motion on that count.

6. <u>Wilson's Constitutional Challenge to Chapter 3 § C of the Rules and Regulations</u>

As a final matter, Wilson "seeks a ruling on the challenge of the constitutionality" of Chapter 3 § C of the Rules and Regulations—that is, the emergency revocation provision. (ECF 25 at 1, 6; *see* ECF 6). He contends that this provision of the Rules and Regulations is unconstitutional as written because it does not require any pre-deprivation due process, lacks a clearly-defined definition of what constitutes an emergency, and affords too much discretion to the Building Commissioner. (ECF 25 at 6).

Defendants were not placed on adequate notice that the Court would take up the constitutional challenge raised by Wilson in Docket Entry No. 6. To explain, Wilson filed the "Notice of Constitutional Challenge of Statu[t]e" via a separate document on May 30, 2023, but then amended his complaint thereafter on June 20, 2023. (ECF 6, 7). In the amended complaint, Wilson did not challenge the constitutionality of Chapter 3 § C on its face aside from cursorily requesting in the final sentence "a declaration ruling part of the [ACBD's] Rules and Regulations unconstitutional." (ECF 7 at 17).

As this Court explained previously, "[p]iecemeal pleadings cause confusion and unnecessarily complicate interpretation of a movant's allegations and intent . . . ." (ECF 58 at 1). Such is the case here. Therefore, to remedy this confusion and place Defendants on notice, and so that the constitutional issue is not dismissed merely on technical grounds, the Court will summarily DENY without prejudice Wilson's motion for summary judgment as to the constitutional challenge. Having said that, the Court will GRANT Wilson leave to file a separate summary judgment motion, supported by proper factual and legal citations, solely on the issue of whether Chapter 3 § C of the Rules and Regulations is unconstitutional on its face. The motion will brief out in accordance with Local Rule 56-1.

## V. CONCLUSION

For the reasons given herein:

(a)    Defendants' first motion to strike (ECF 38) is DENIED;

(b)    Defendants' second motion to strike (ECF 75) is GRANTED IN PART and DENIED IN PART as set forth in this Opinion and Order;

(c)    Wilson's motion for partial summary judgment (ECF 25) is DENIED. However,

Wilson may file, on or before the dispositive motions deadline, a separate summary judgment motion, supported by proper factual and legal citations, on the issue of whether Chapter 3 § C of the Rules and Regulations is unconstitutional on its face. The motion will brief out in accordance with Local Rule 56-1;

(d)     Defendants' cross-motion for summary judgment (ECF 59) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED as to Counts 1 and 3 of the amended complaint, and those Counts are DISMISSED without prejudice. The motion is otherwise DENIED. However, Defendants may file, on or before the dispositive motions deadline, a revised summary judgment motion whether Defendants Hutter and Brelje are entitled to absolute immunity or qualified immunity from Wilson's § 1983 claims;

(e)     Given that both summary judgment motions were summarily denied as to Count 5, that is, Wilson's failure-to-intervene claim against the Board of Commissioners, either party may file a revised summary judgment motion on Count 5 prior to the dispositive motions deadline; and

(f)     Wilson's motion for oral argument (ECF 86) is DENIED as unnecessary.

SO ORDERED.

Entered this 7th day of August 2024.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge

44