UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CHRISTOPHER WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:23-cv-00184-ALT |
| ) | |
| JOSEPH HUTTER, *Allen County Building* ) | |
| *Commissioner, sued in the individual and* ) | |
| *official capacity, et al.*, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

On August 7, 2024, Magistrate Judge Susan Collins entered an Opinion and Order (the "First Order") (ECF 102) denying *pro se* Plaintiff Christopher Wilson's motion for partial summary judgment (ECF 25), and granting in part and denying in part Defendants' cross-motion for summary judgment (ECF 59).[1] In doing so, Judge Collins granted the parties leave to file, on or before the dispositive motions deadline, a second summary judgment motion as to certain remaining claims. (*See* ECF 102 at 43-44).

On July 7, 2025, this case was reassigned to the undersigned Magistrate Judge due to the retirement of Judge Collins. (ECF 129). Now before the Court is Defendants' second motion for summary judgment, together with a memorandum in support, statement of material facts, and supporting evidence, filed on April 3, 2025. (ECF 119-122). Wilson has not filed a response to Defendants' motion or a second summary judgment motion of his own, and his time to do so has

---

[1] The parties consented to the exercise of jurisdiction by the Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF 15, 17).

now passed. *See* N.D. Ind. L.R. 56-1(b); (ECF 126-128; *see* ECF 123). Therefore, Defendants' second summary judgment motion is ripe for ruling. For the following reasons, Defendants' second summary judgment motion will be granted in part and denied in part.

## I. PROCEDURAL BACKGROUND

In May 2023, Wilson, an electrician, filed a complaint against Defendants which he amended one month later. (ECF 1, 7). In his seven-count amended complaint, which is the operative complaint of record, Wilson alleges that Defendants the Allen County Board of Commissioners ("Board of Commissioners"), Allen County Building Commissioner Joseph Hutter ("Hutter" or "Building Commissioner"), the Allen County Building Department ("ACBD"), ACBD Chairman of the Board of Directors Jon Brelje, retired Chief Electrical Inspector James Krauhs, and Allen County Inspector Dennis Brockhouse, violated Wilson's constitutional rights when the ACBD revoked his Master Electrician license and the Electrical Contractors license of his business, AEY Electrical Service, LLC ("AEY"), and placed a condition on and denied AEY certain permits. (ECF 7; *see also* ECF 23, 51, 58). Wilson titled the counts in his amended complaint as follows: Count 1, Restriction of License; Count 2, Conspiracy Against Rights; Count 3, Revocation of Contractors License; Count 4, Revocation of Master Electrician License; Count 5, Failure to Intervene; Count 6, Slander; and Count 7, Interference. (ECF 7). Wilson also filed a separate "Notice of Constitutional Challenge of Statu[t]e" in May 2023, contending that Chapter 3 § C of the Board of Commissioners Rules and Regulations dated May 7, 2003 (the "Rules and Regulations")—the emergency provision under which the Building Commissioner can revoke a license on an emergency basis—is unconstitutional on its face. (ECF 6; *see* ECF 7 ¶ 24).

Defendant ACBD was dismissed at the outset in the Court's screening order because it "is an arm of the County not a suable entity under 42 U.S.C. § 1983." (ECF 8 at 2). Defendants Brockhouse and Krauhs—the only Defendants named in Counts 6 and 7 of the amended complaint, respectively—were later dismissed by stipulation of the parties. (ECF 79, 82, 108, 109). Therefore, only Defendants Hutter, Brelje, and the Board of Commissioners remain.

On August 21, 2023, Judge Collins held a preliminary pretrial conference and entered a Scheduling Order, setting April 19, 2024, for the completion of all discovery, which was later extended to June 3, 2025, for all fact discovery, and July 21, 2025, for all expert discovery; and May 20, 2024, for the filing of dispositive motions, which was later extended to July 3, 2025. (ECF 20, 21, 93, 97, 110, 116, 123).

In September 2023, Wilson moved for summary judgment on Counts 1, 3, 4, and 5 of his amended complaint (ECF 25), and Defendants responded in kind with a cross-motion for summary judgment on these Counts (ECF 59). On August 7, 2024, Judge Collins entered the First Order denying Wilson's motion for partial summary judgment but granting him leave to file a separate summary judgment motion by the dispositive motions deadline as to: (1) his failure-to-intervene claim in Count 5, and (2) his constitutionality challenge to Chapter 3 § C of the Rules and Regulations. (ECF 102 at 43-44). Also in the First Order, Judge Collins granted in part and denied in part Defendants' cross-motion for summary judgment, dismissing Counts 1 and 3 because they advanced claims arising out of actions taken against AEY, who is not a named plaintiff in this case (*id.* at 24-26, 44), and affording Defendants leave to file a second summary judgment motion as to: (1) whether Hutter and Brelje are entitled to absolute immunity or qualified immunity from Wilson's 42 U.S.C. § 1983 claims; and (2) the failure-to-intervene

3

claim in Count 5 (*id.* at 27-31, 41-42, 44).

On April 3, 2025, Defendants filed their second motion for summary judgment, arguing that: (1) the § 1983 claims against Hutter and Brelje should be dismissed because they "did not take any individual action against the Plaintiff" (ECF 120 at 9); (2) the Board of Commissioners had no legal duty to intervene in the administrative process of ACBD to reinstate Wilson's Master Electrician license (*id.* at 10-12); and (3) Wilson's due process claims arising from the revocation of his Master Electrician license fail as a matter of law (*id.* at 12-21). After Wilson failed to timely respond to Defendants' second motion for summary judgment, Judge Collins set a status conference for June 2, 2025. (ECF 124, 125). Wilson, however, failed to appear at the June 2, 2025, conference, and thus, Judge Collins set a show-cause hearing and status conference for June 25, 2025, ordering Wilson to appear in person. (ECF 126; *see also* ECF 127).

Wilson appeared at the June 25, 2025, hearing and status conference and requested an additional thirty days within which to file a response to Defendants' second motion for summary judgment. (ECF 128). Judge Collins granted Wilson the extension despite his belated request, affording him to and including July 25, 2025, to file a response to Defendants' second motion for summary judgment. (*Id.*). Wilson, however, failed to do so. Nor did Wilson file his own second motion for summary judgment by the dispositive motions deadline of July 25, 2025.

## II. STATEMENT OF MATERIAL FACTS

Judge Collins set forth a thorough Statement of Material Facts in the First Order (ECF 102 at 13-22), and Defendants offer very few additional facts in the statement of material facts submitted with their second summary judgment motion (ECF 121 (adding paragraphs 19, 34-39)). Ultimately, Defendants' additional facts are irrelevant to the Court's analysis herein.

4

Therefore, for purposes of judicial efficiency, the Court incorporates by reference the Statement of Material Facts on pages 13-22 of the First Order and will not restate them here.

### III. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a); *see Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005) (citation omitted).

When ruling on a motion for summary judgment, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne*, 337 F.3d at 770 (collecting cases). The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Id.*

A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* (citations omitted); *see also Ballance*, 424 F.3d at 616. However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Payne*, 337 F.3d at 771 (citation omitted); *see also Scott v. Harris*, 550

5

U.S. 372, 380 (2007) (instructing that in determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts" (citation omitted)).

## IV. DISCUSSION

### A. Wilson's Claims Against Hutter and Brelje in Their Individual Capacity

In their first summary judgment motion, Defendants argued that Hutter and Brelje were entitled to absolute immunity from Wilson's § 1983 claims. (ECF 61 at 13-14; ECF 102 at 27-31). Judge Collins concluded in the First Order that on the briefing submitted Defendants failed to carry their burden of showing that Hutter and Brelje are entitled to this affirmative defense. (ECF 102 at 27, 30-31). In doing so, Judge Collins afforded Defendants leave to file a revised summary judgment motion whether Hutter and Brelje are entitled to absolute immunity or qualified immunity from Wilson's § 1983 claims. (*Id.* at 31, 44). However, in their second summary judgment motion, Defendants no longer assert an immunity defense and instead argue that Hutter and Brelje are entitled to summary judgment on Wilson's § 1983 claims because they "did not take any individual action against the Plaintiff." (ECF 120 at 9).

"For a defendant to be held liable under section 1983, he must have been personally involved in the violation of the plaintiff's constitutional rights." *Renee v. Neal*, 483 F. Supp. 3d 606, 613 (N.D. Ind. Sept. 2, 2020) (citing *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018)). "The personal-involvement requirement is satisfied if the constitutional violation occurs at a defendant's direction or with [his] knowledge or consent." *Mitchell*, 895 F.3d at 498 (citation omitted); *see Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[T]o establish *personal* liability in a §

1983 action, it is enough to show that the official, acting under color of state law, *caused* the deprivation of a federal right." (citation omitted)).

Defendants assert that the action Wilson complains of—the revocation of his Master Electrician license and issuance of a Journeyman Electrician license—"was subject to a vote of the entire ACBD and the decision was that of the entire ACBD." (ECF 120 at 10). Defendants contend that Hutter took no individual action against Wilson because the emergency action taken by Hutter involved only AEY's Electrical Contractors license, not Wilson's Master Electrician license. (*Id.*). As to Brelje, Defendants concede that he suggested to the ACBD Board that Wilson's Master Electrician license be revoked, but emphasize that the decision to revoke it ultimately was that of the ACBD Board. (*Id.*). Defendants accordingly argue that neither Brelje nor Hutter acted in their individual capacity to deprive Wilson of either due process or a property right and, therefore, that summary judgment in their favor is appropriate. (*Id.*).

In *Smith-Hosch v. Bramble*, the district court addressed the viability of plaintiff's § 1983 claims of discrimination against individual school board members, who argued that they could not have caused the constitutional deprivation at issue because the board of directors acts as a unit. No. DKC 18-3659, 2019 WL 4060017, at *3 (D. Md. Aug. 28, 2019); *see also Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 663 (D. Md. 2021). The court opined as follows:

> Surely no *individual* board member or board employee may be held liable for the actions of a board as a whole. If, however, a plaintiff can make 1) specific allegations regarding the *individual* conduct of *a* member of board, and 2) that individual action is found to have deprived the plaintiff of a federal right, then the individual member of that board may be held liable for his or her actions under § 1983.

*Smith-Hosch*, 2019 WL 4060017, at *4; *see also Willey*, 557 F. Supp. 3d at 663-64. Thus, the court rejected the individual defendants' argument that "individual school board members can, under no circumstances, be held liable under § 1983 for the consequences of their votes" and denied their motion to dismiss. *Id.* Having said that, courts have clarified that a plaintiff "must do more than make conclusory claims of individual [board] member conduct; specific allegations of individual conduct are required." *Hoelzer v. Bd. of Governors of the Univ. of North Carolina*, No. 1:20CV1072, 2022 WL 973069, at *14 (M.D.N.C. Mar. 31, 2022) (citation omitted); *see Willey*, 557 F. Supp. 3d at 664 (dismissing the plaintiff's § 1983 claims against the individual board members where the complaint lacked specific allegations against the individuals).

On the record presented, a reasonable jury could conclude that Hutter or Brelje took specific actions against Wilson to support a § 1983 claim against them individually. The First Order reflects that although the parties seemed to agree in their first summary judgment briefs that the January 20, 2023, letter from Hutter revoked AEY's Electrical Contractors license on an emergency basis, the evidence of record is actually unclear whether that letter also revoked Wilson's Master Electrician license. (*See* ECF 102 at 18 n.6 (citing ECF 25 at 6; ECF 63-4 at 3; ECF 68-2 at 3)). Hutter addressed the letter to "Christopher Wilson c/o AEY Electrical Service LLC", and the letter stated that it revoked "your Electrical Contractor license[.]" (ECF 68-2 at 5). But ACBD's computer-generated record does not differentiate whether it was AEY's Electrical Contractors license or Wilson's Master Electrician license that was placed "ON HOLD" at the time. (ECF 68-2 at 3; *see* ECF 102 at 18 n.6). Then, at the beginning of the February 2, 2023, special ACBD Board meeting addressing the license-revocation matter, Wilson specifically asked which license had been revoked, and Brelje responded that it was Wilson's Master Electrician

license. (*See* ECF 102 at 18 n.6).

Given this inconsistent evidence, the Court cannot conclude on this record that Hutter and Brelje took no specific actions outside of the ACBD Board vote. If the trier of fact concludes that Wilson's Master Electrician license was revoked on an emergency basis by Hutter via his January 20, 2023, letter, that is individual conduct upon which a reasonable jury could conclude that Hutter was personally involved in the revocation of Wilson's Master Electrician license. Alternatively, if the trier of fact concludes that only AEY's license was revoked on an emergency basis by Hutter's January 20, 2023, letter, then Brelje's misrepresentation to the Board at the start of the February 2, 2023, meeting is individual conduct upon which a reasonable jury could conclude that Brelje was personally involved in the revocation of Wilson's Master Electrician license. Given this unclear factual record, Defendants' request for summary judgment in their favor on Wilson's § 1983 claims against Hutter and Brelje in their individual capacity will be denied.[1]

### B. Wilson's Failure-to-Intervene Claim Against the Board of Commissioners

In Count 5, Wilson alleges that the Board of Commissioners has "a duty to Allen County citizens to intervene and stop civil rights being violated," and that the Board failed to intervene when Wilson sent them various communications about the civil rights violations he allegedly experienced. (ECF 7 ¶ 64). In the First Order, Judge Collins observed that Wilson "fail[ed] to cite a single case in which a local government official has been held liable for 'failure to intervene'

---

[1] To the extent Wilson has sued Hutter and Brelje in their official capacities, the official-capacity claims are indistinguishable from Wilson's claims against the Board of Commissioners. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." (ellipsis in original) (citation and quotation marks omitted)).

outside the use of excessive force by police officers." (ECF 102 at 41-42 (citation omitted)). Ultimately, Judge Collins denied both summary judgment motions as to Count 5 because neither party had adequately developed their argument on this claim. (*Id.*). In doing so, Judge Collins afforded the parties leave to file a revised summary judgment motion on this claim prior to the dispositive motions deadline. (*Id.* at 41-42, 44)

In their second summary judgment motion, Defendants seek summary judgment in their favor on Count 5, asserting that the duty to intervene appears to pertain only to police officers. (ECF 120 at 11-12 (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994); *Byrd v. Clark*, 783 F.2d 1002, 1006-07 (11th Cir. 1986))). Defendants state that "[b]ased on [their] research, no duty to intervene has been found to circumvent the approved administrative process in a situation like the claims before the Court." (*Id.* at 12).

"A party waives an argument or abandons a claim when [he] fails to respond to an argument raised on summary judgment." *Buggs v. McNulty*, No. 2:23-cv-289, 2025 WL 2207297, at *3 (N.D. Ind. July 31, 2025) (citation omitted); *see Fair Hous. Ctr. of Cent. Ind., Inc. v. Rainbow Realty Grp., Inc.*, No. 1:17-cv-01782-JMS-TAB, 2022 WL 6158365, at *1-2 (S.D. Ind. Oct. 7, 2022) ("The Court will not make arguments for the parties, nor should the parties expect that the Court will consider argument that the parties could have made, but did not."). As stated earlier, Wilson has not responded to Defendants' second summary judgment motion or filed a second summary judgment motion of his own, and thus, the Court deems that Wilson has abandoned his failure-to-intervene claim against the Board of Commissioners. *See Buggs*, 2025 WL 2207297, at *3. Accordingly, Defendants' second motion for summary judgment will be granted as to Wilson's failure-to-intervene claim in Count 5.

*C. Wilson's Constitutional Challenge to Chapter 3 § C of the Rules and Regulations*

Judge Collins noted in the First Order that Wilson in his first summary judgment motion sought "a ruling on the challenge of the constitutionality" of the emergency revocation provision in Chapter 3 § C of the Rules and Regulations. (ECF 102 at 24 (citing ECF 25 at 1, 6; ECF 6)). Judge Collins further stated, however, that Defendants were not placed on adequate notice that she would take up Wilson's constitutional challenge at that point, and thus, she summarily denied Wilson's first motion for summary judgment as to the constitutional challenge. (*Id.* at 43-44). But in doing so, Judge Collins granted Wilson leave to file, on or before the dispositive motions deadline, "a separate summary judgment motion, supported by proper factual and legal citations, on the issue of whether Chapter 3 § C of the Rules and Regulations is unconstitutional on its face." (*Id.* at 44).

The time for Wilson to file a separate summary judgment motion challenging the constitutionality of the emergency revocation provision has now passed. "[Wilson's] *pro se* status does not relieve him of his obligation to comply with court-imposed deadlines or to communicate with the Court . . . ." *Warren v. Ill. Dep't of Corrs.*, No. 3:20-CV-548-MAB, 2024 WL 2154960, at *1 (S.D. Ill. May 14, 2024). Therefore, the Court deems Wilson to have abandoned his challenge to the constitutionality of the emergency revocation provision in Chapter 3 § C of the Rules and Regulations. *See Buggs*, 2025 WL 2207297, at *3.

*D. Defendants' Arguments as to Wilson's Due Process Claim*

In the First Order, Judge Collins penned a lengthy analysis on Wilson's procedural due process claim arising from the revocation of his Master Electrician license. (ECF 102 at 31-41). Judge Collins concluded that Wilson had a property interest in his Master Electrician license, and

11

thus, satisfied the first prong of his due process claim. (*Id*. at 35). But Judge Collins further opined that the factual record was not sufficiently developed for her to discern the proper weighting and balancing of the government interest factor pertinent to the second prong of Wilson's due process claim (*id.* at 39), or whether Wilson was afforded sufficient post-deprivation process given that the record did not reflect any post-deprivation remedy for his economic injury (*id.* at 41). Notably, Judge Collins did not grant leave to either party to file a second summary judgment motion on Wilson's due process claim. (*See id.* at 43-44).

Yet, inexplicably, Defendants spend the bulk of their second summary judgment motion arguing, again, that they are entitled to summary judgment on Wilson's due process claim. (*See* ECF 120 at 12-21). They first rehash their argument that Wilson did not have a property interest in his Master Electrician license, relying on the same case as in their first summary judgment motion. (ECF 120 at 13-15 (citing *Baliga v. Smith*, 594 F. Supp. 3d 1084, 1089 (S.D. Ind. 2022)); *see* ECF 61 at 15-17). But Judge Collins already determined that Wilson had a property interest in his Master Electrician license (ECF 120 at 15), and I will not reconsider Defendants' rehashed arguments here.

Defendants next reiterate their prior argument that even if Wilson did have a property right in his Master Electrician license, he was afforded appropriate procedural due process. (ECF 120 at 15-17; *see* ECF 61 at 18-21). They then regurgitate their prior argument that Wilson was afforded sufficient post-deprivation due process, relying on the same case as in their first summary judgment motion. (ECF 120 at 18-19 (citing *Simpson v. Brown Cnty.*, 860 F.3d 1001 (7th Cir. 2017)); *see* ECF 61 at 18-19). Judge Collins opined in the First Order that Wilson had a strong interest in his Master Electrician license and that a risk of erroneous deprivation existed

12

under ACBD's procedures, but that the record was not sufficiently factually developed for her to discern the proper weighting and balancing of the government interest factor, or whether sufficient post-deprivation process was afforded to Wilson. (ECF 102 at 36-44).

"[A] federal district court's decision is not a 'first draft,' subject to a prolonged cycle of further comment, debate, and revision." *Noon v. Sailor*, No. NA99-0056-C-H/B, 2000 WL 684219, at *1 (S.D. Ind. Apr. 17, 2000) (citations omitted). Judge Collins did not grant leave to either party to file a second motion for summary judgment as to Wilson's due process claim, and thus, Defendants' rehash of their prior arguments on Wilson's due process claim in their second summary judgment motion is not well taken.

Defendants do raise one new argument in support of their position that Wilson was afforded appropriate procedural due process. While they concede that Wilson has a strong interest in an "electrician's license", they contend he does not have "the same strong interest" in his Master Electrician license because he could still work in Allen County as an electrician with a Journeyman Electrician license, as well as outside Allen County with his Master Electrician license. (ECF 120 at 16).[3] But to the extent Defendants' second motion for summary judgment is actually a disguised motion to reconsider Judge Collins's conclusions on Wilson's due process claim in the First Order, it is unavailing. "[M]otions to reconsider are not vehicles for presenting new arguments or evidence that could and should have been presented before the court made its initial decision." *Noon*, 2000 WL 684219, at *1 (citing *Moro v. Shell Oil Co.*, 91 F.3d 872, 876

---

[3] Presumably in connection with this argument, Defendants submit additional facts reflecting that Wilson was unemployed from January 23, 2023, until his wife started a new electrical company, Near Me Electric, in May 2023, and that Wilson made no attempts to seek employment from any other electrical company in the interim. (ECF 121 ¶ 38).

(7th Cir. 1996)). Certainly, Defendants could have raised this argument in their April 2023 cross-motion for summary judgment, but did not do so. (*See* ECF 61 at 18-21). Therefore, Defendants' second summary judgment motion as to Wilson's procedural due process claims will be denied.[4]

## V. CONCLUSION

For the foregoing reasons, Defendants' second motion for summary judgment filed on April 3, 2025 (ECF 119), is GRANTED as to Count 5 of the amended complaint (the failure-to-intervene claim) but is OTHERWISE denied. Additionally, Wilson's challenge to the constitutionality of Chapter 3 § C of the Rules and Regulations (ECF 6) is DISMISSED. Wilson's only remaining claims are his procedural due process claims under the Fourteenth Amendment and 42 U.S.C. § 1983 against Defendants Hutter and Brelje in their individual capacities, and the Allen County Board of Commissioners. The Court will set this case for a status and scheduling conference via separate entry.

SO ORDERED.

Entered this 4th day of March 2026.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge

---

[4] Defendants also argue that to the extent Wilson advances a substantive due process claim, Defendants' conduct does not rise to the level of "shocking the conscious" as required for such a claim. (ECF 120 at 20-21). Judge Collins, however, viewed Wilson's amended complaint as advancing a procedural, rather than a substantive, due process claim. (*See* ECF 102 at 31-41). In any event, to the extent Wilson may have attempted to advance a substantive due process claim, he has abandoned it by failing to respond to Defendants' arguments here. *See Buggs*, 2025 WL 2207297, at *3.